# J. WARREN VREELAND

*v.*

# WALLACE N. VREELAND et al.

[Filed February 1st, 1904.]

1. The statute of descents regulating advances of land can have no application to a question as to whether conveyances of real estate by a testator were to be deemed as advances of "sums of money," or "advances and payment of money," within the meaning of the terms as used in his will, it applying only in cases of intestacy.

2. An agreement by a child that property received shall constitute an advance may be considered in determining whether it is the intention of the will that the property shall be so treated.

3. Testator's children signed an instrument acknowledging having received from their father "divers sums of money and other property," which he desired acknowledged in order that no misunderstanding or confusion might result in the settlement of his estate. Subsequently two of the children signed an instrument acknowledging that since executing the above instrument they had received certain real estate as an advancement, and consenting that the value of the same, as fixed at a certain sum set opposite their names therein, "may be deducted from any share we may become entitled to" in his estate. The will directed "that the sums of money which I have advanced and which I may hereafter advance to my children shall be considered as advances and charged against each; * * * such advances and payment of money shall be taken out of their respective shares."—*Held*, that the conveyances of land to the two sons were to be deemed "sums of money," or "advances and payment of money," within the intention of the will.

4. The agreements related to any distributions that might be made of the estate, whether under a will or on intestacy, and might be considered in determining the intention of the will.

5. The two receipts constituted a contract on the part of the sons that the land might be treated as an advancement of money in a will by the testator, and they were estopped from denying its effect.

6. A contract by children with their father that conveyances of land should be treated as advances was valid.

On bill for partition.

Vreeland v. Vreeland.

*Mr. James A. Gordon,* for the complainant.

*Mr. John Griffin,* for the defendant, Wallace N. Vreeland.

STEVENSON, V. C.

Michael DeMott Vreeland died March 19th, 1900, leaving a will, dated January 20th, 1896. After making some comparatively small devises and legacies he gave the entire residue of his estate, of every kind, to his seven children and the children of a deceased child, equally—eight shares in all. Following this residuary disposition, the will proceeds:

"*Seventh.* I hereby order and direct that the sums of money which I have advanced and which I may hereafter advance to each and any of my respective children, shall be considered as advances made to each and any of them out of my estate, and shall be charged as against them and each of them, and as against such share of my estate as each and any of them may be entitled to at my decease, and such advances and payment of money in my lifetime to each and any of them shall be taken out of the respective shares of each and any of my said children after my decease, and shall become a part of my residuary estate."

The only question argued in the cause is whether two certain conveyances of real estate by the testator to the complainant and the defendant, Wallace N. Vreeland, respectively, are to be deemed "sums of money" or "advances and payment of money," within the meaning of the seventh paragraph of the testator's will above set forth. So far the statement of the matter argued discloses no possible question. The statute of descents, which regulates advances of land, of course, cannot affect this case, applying, as it does, only to cases of intestacy. It may be observed, in passing, also, that only a few days before the testator executed this will he made a partial distribution of his real estate in equal shares among a certain number—if I recollect aright, six—of his children. It is not claimed in this case by any party that these gifts of land to the residuary devisees can possibly be deemed within the operation of paragraph seven, relating to advances.

The peculiar facts and conditions, upon which it is argued

that the above-mentioned transfer of the two tracts of land to the complainant and to the defendant, Wallace N. Vreeland, respectively, must be deemed "sums of money advanced" to these sons by their father during his lifetime, are as follows:

On May 20th, 1893, five of the children of the testator, including the complainant and the defendant, Wallace N. Vreeland, executed under their hands and seals an instrument which is termed an indenture. This instrument recites that the parties signing it, being children of Michael DeMott Vreeland, had each received from their father "divers sums of money and other property," and that it was the desire of their father to have them "acknowledge the receipt of said money or other property in order that no misunderstanding or confusion may result in the settlement of his estate by his death by reason of any inability to then prove the proper amounts received," &c. The instrument further recites that the father had fixed the "amounts received by each" of the children and states said amounts in money.

The instrument then proceeds to witness that the parties executing it respectively acknowledged "the receipt of the sum of money" in each case stated, and acknowledged the same to be "an advancement," and that the said parties also thereby consented "that the same be deducted from whatever amount, share or portion of the estate" of their said father, "whether real or personal," they would "be entitled to receive upon his death had not such advancement been made."

Following the above-stated instrument is a briefer one, dated December 28th, 1893, executed by the complainant, J. Warren Vreeland, and Wallace N. Vreeland, under their respective seals. The two deeds to these two sons, respectively, bear the same date. This instrument is as follows:

"We, the undersigned, do hereby each for himself further acknowledge the receipt by us of certain real estate from our said father, as an advancement made to us by our said father since the execution of the above instrument, and we do each for ourselves, consent that the value of the same fixed by our said father, and set opposite to our respective names, be charged against us as an advancement in the manner expressed in the above instrument, and that the same may be deducted from any

share we may become entitled to in our said father's estate, in like manner and in addition to the amounts therein charged against us respectively, that is to say:

"J. Warren Vreeland, Eighteen hundred dollars..........$1,800.00

"Wallace N. Vreeland, Two thousand two hundred dollars.. 2,200.00

"In witness whereof, we have hereunto set our hands and seals this 28th day of December, A. D. 1893.

"J. Warren Vreeland.    (seal.)

"Wallace N. Vreeland.    (seal.)"

Still a third similar instrument follows referring to the former ones, executed by the defendant, Wallace N. Vreeland, only, but inasmuch as it acknowledges the receipt of cash and no one claims that in fact it does not evidence an advance of money, no question in regard to it has been raised.

It must be conceded that the controversy in this case is to be determined solely by the construction of the clause in the testator's will above set forth. Where transfers of real or personal property are made by a parent to his children, they can operate as advancements only in case of intestacy. If, after making such advancements, the parent makes his will without referring to the advancements so made, children who have received them take their shares under the will, without being obliged to account for the advancements. *1 Am. & Eng. Encycl. L. (2d ed.) 778, 4; Camp v. Camp, 18 Hun 217.*

As the above authorities show, the reason for this rule is that where the testator has divided his estate among his children and refrained from any reference to advancements which he has made to them, the inference cannot properly be drawn that the testator intended that the advancements should be charged against the testamentary gifts. The more natural inference is that the testator, knowing that he had made advancements, nevertheless saw fit to dispose of his property among his children without reference to those advancements, and thus bring about a different disposition of his property from that which would be effected by law in case he died intestate.

It is well settled in this state that a child may make a binding agreement with his parent accepting a transfer of property in full discharge of all claims as heir or next of kin. *Havens*

Vreeland v. Vreeland.

v. *Thompson, 11 C. E. Gr. 383; Green v. Hathaway, 9 Stew. Eq. 471; Brands v. De Witt, 17 Stew. Eq. 545.*

The rule is to a large extent based upon the proposition that, in reliance upon the agreement, the parent has refrained from making a will and that therefore the child should be held estopped to dispute the effect of his agreement, the disregard of which would effectuate a fraud.

I am unable to perceive why a corresponding rule, based upon precisely the same equity, should not hold the child to his solemn agreement in reliance upon which the parent has made his will or refrained from changing his will. It seems clear that the child is held in every such case, but the question is whether the parent, by his will, has discharged the obligation. Such discharge is effected where the will makes a disposition of property, which is inconsistent with the continuance of the obligation. Hence, whether the agreement is enforceable against the child or is to be disregarded, it seems ultimately to be a question of the construction of the will—an ascertainment of the intention of the testator as disclosed therein. The intention, I think, is to be derived from the perusal of the will and also from the perusal of the agreement, because the agreement was an existing fact with reference to which the will was made, and therefore comes within the definition of evidence which may be taken to aid the court in construing a will.

Turning to the agreement presented in this case, the first question is whether its sole function was to afford evidence of the extent of advancements in case of the death of the father intestate, in which case only, strictly speaking, any inquiry as to advancements would arise, or whether it had the further function of becoming operative in case the father made a will, referring to it and dealing with advances made by him to his children in his lifetime, by evidencing the fact of such advances and the amount thereof.

I think it is plain that the purpose of these successive instruments, the last of which was made more than two years before the testator made his will, related to any distribution of the estate of the testator, whether upon intestacy or in pursuance

Vreeland *v.* Vreeland.

of a will. The testator procured these instruments to be made and preserved them, and they were found after his decease among his papers. The instruments all carefully avoid using any terms which would confine their operation to a case of intestacy. It is "any share" which the children "may become entitled to" in their father's estate which these instruments deal with. Surely, a child "becomes entitled to a share" of his father's estate just as plainly under the terms of a will as when the father dies intestate. It may be observed that the will adopts the phraseology of the agreements, referring to the shares of the estate which the children "may be entitled to" at the testator's decease. This language strongly indicates at least what the testator thought was the scope of these agreements, and it is the testator's intention which is the thing to be ascertained.

So far as the instruments evidence the payment of "sums of money" by the testator to any of his children in his lifetime and the amount of such payments, they plainly become operative as evidence under the provisions of paragraph seven of the will, and the inference, to my mind, is inevitable that the parent procured the execution of them by his children with such intent in his mind and that the children are chargeable with knowledge of that intent. They acknowledge that they had received property and money, consented that if their father died intestate, the amounts which they acknowledge should be deemed advancements, and also consented, although their consent could not fetter their father in disposing of his property, that what they had received should be deemed money and as such be deducted from the shares which their father might give them under his will.

The father's will, it seems to me, was drawn with these instruments in view, and to fit the situation which they created. So far as the testator had to deal with advancements of money, he was not obliged to recite the amounts of money which he had advanced to any of his children and which he desired to have deducted from their shares. These solemn instruments established, as we have seen, the fact of the advancements of money and the amount thereof.

43

Vreeland *v.* Vreeland.

It is not disputed, as we have seen, that the first of these three instruments, dated May 20th, 1893, proves "advances" of "sums of money" to five of these children, amounting in the aggregate to about $8,000, and that under the terms of paragraph seven of the will the shares of these children are to be charged with the respective amounts so received by them. And yet it appears that while these five children acknowledged the receipt of the "sums of money" set opposite their names, such sums did not in fact represent cash advancements only, but included the value of "other property" besides money.

But in the case of the second instrument with which we have particularly to deal—the one dated December 28th, 1893—it appears distinctly that what in fact J. Warren Vreeland and Wallace N. Vreeland received from their father was a conveyance of land. It, plainly, was not in fact a "sum of money," or a payment of money. I think, however, that the instrument, as a whole, amounts to an agreement on the part of these two children that for the purposes of any distribution of their father's estate at his death, either in case of intestacy or in pursuance of a will, these conveyances of land are to be deemed payments of money as against them, and as such to be deducted from the shares of their father's estate to which they should "be entitled." We have seen that these instruments were made with intent that they should have force in case the father saw fit to give them force by provisions in a will. The father, in fact, by express provisions in his will, it is admitted, has made these instruments operative as evidence of cash payments to a very large extent. Taking the first and second instruments together, for they are so connected that the earlier one must be considered in construing the later, I think the two sons must be deemed to have solemnly agreed with their father that the gifts of land which they acknowledged he had made should be deemed an advancement of money, and as such might be dealt with by their father in any will which he might see fit to make.

Turning, now, to the will which the testator made, with the knowledge of this instrument before him, the fair, and I think plain, meaning of the phrases "sums of money" and "advances

and payment of money," includes not only actual payments of money, but transfers of property to the children, which they (the children) have agreed shall be deemed payments of money for the purposes of the distribution of the father's estate, either by virtue of a will or in case of intestacy.

The father, as we have seen, procured these instruments to be made and retained them continuously in his possession, and at least one purpose in making them was to aid the father in the business of making a testamentary disposition of his property. The children, who signed these instruments, acknowledge eight different advancements and each is distinctly placed upon a pecuniary basis—in effect reduced to cash. I cannot adopt the view that the instrument dated December 28th, 1893, can be construed merely as an acknowledgment of an advancement in land together with an ascertainment of the value thereof. This instrument refers to the one which preceded it and provides for charging the amount named in cash "as an advancement in the manner expressed" in the preceding instrument, and the amount is to be deducted from any share to which the two children might become entitled, "whether real or personal." The two advancements acknowledged in this second instrument are therein made chargeable precisely as the five advancements are made chargeable in the preceding instrument, and it is conceded that the five advancements named in the first instrument are chargeable as cash—as sums of money.

The construction of the instrument in question as effecting a sort of conversion of real estate into money for certain purposes is important only, however, in order to construe the terms of the will. The existence of this agreement was a fact in view of which the testator acted. In construing a will, using such a term as "money," the court plainly may take into consideration the nature of the testator's estate. Here, in my opinion, the testator regarded all these advancements, whether actually made in the form of conveyances of land or payments of money, or made partly in one way and partly in the other, as sums of money advanced by him, fixed as such irrevocably as against these children by their solemn deeds. The testator made his

Vreeland *v.* Vreeland.

will in reliance upon this agreement. These two children, in my opinion, are estopped to deny the effect of their agreement, inasmuch as to permit them to do so would amount to a fraud.

This whole case rests ultimately upon the proposition that the children may make binding agreements with their father upon which the father has a right to rely, not only in refraining from making a will, but in making a will. I see no reason why, if this principle be correct, a child may not bargain with his parent that a conveyance of land from his parent to him is to be deemed an advance of money of a certain amount for the purposes of any testamentary disposition which the parent may see fit to make. No doubt, as I have intimated, the proof must be clear that the language employed by the testator in his will was employed with reference to the language employed in the agreement of the child, because the will affords an ample opportunity to the testator to make his meaning plain by using other language. In my opinion, the meaning of paragraph seven in this will is not difficult to ascertain if it be borne in mind that these three instruments, a part of the language of which is incorporated in paragraph seven, were before the testator when he made his will, and that he made his will with their provisions in view, with the acknowledgment of his children therein contained that what they had received were "sums of money."

If the testator did not mean that these two tracts of land should be deemed advances of "sums of money" to the extent stated in the paper before him, it seems to me that he would naturally and inevitably have excluded them from the operation of paragraph seven. These transactions stood before him as money transactions—sums of money charged against his children and which they acknowledge they have received.

There were very strong reasons why the testator, aided presumably by counsel, would naturally use substantially the language employed in these agreements.

The testator must be presumed not to have intended to charge any of the six favored children with the valuable gifts of land which he had made to them less than three weeks before he made his will. He must have remembered these New Year's gifts

Vreeland *v.* Vreeland.

which he had made in a manner and under circumstances which must have impressed them upon his mind and upon the minds of his children. As, therefore, he manifestly did not wish to alter the character of these absolute gifts of land so as to make them advancements, he and his counsel would have been liable to direct in the will that only advancements in the form of "sums of money" or "payments of money" should be charged against the children who had received them.

The testator and his counsel, if he had one, had before them the solemn agreements of five of these children to the effect that certain advancements made to them some years before, which consisted of both real and personal property, should be deemed "sums of money" and as such should be deducted from the shares of both real and personal property which they (the children) "would be entitled to receive" upon their father's death out of his estate. He had, it is conceded, intended that these advancements should all be reduced to a cash basis and treated as money, and as such be charged against the children who had received them in case he should die intestate, but he had these instruments carefully worded so as to make them apply to shares under a will as well as to shares distributed upon intestacy. The argument for the defendant, Wallace N. Vreeland, admits that these instruments were drawn with a view to their serving as evidence in case the father saw fit to make a will referring to them. But whether this be true or not, it is clear that when the father undertook to make his will these agreements were in a form which enabled him to take cognizance of them and rely upon them in making a testamentary distribution of his estate.

It was most natural that the testator should use the phraseology of the agreements as he did if his intention remained unchanged. What the agreements saw fit to term "sums of money" why should he not call by the same term?

It was, it seems to me, not natural that the testator should use this phraseology if he had changed his mind and concluded, by his will, to charge these five children only with advancements which, in fact, were in the form of sums of money, as distinguished from advancements which they had agreed should

be deemed sums of money for the purposes of the distribution of the estate.

It may be observed also that if the term "sums of money," mentioned in paragraph seven, are not the "sums of money" acknowledged in the agreements, then the first agreement, which is the most important of all and acknowledged the receipt by the five children of five sums aggregating about $8,000 as advancements, would become of little value as evidence, and the inquiry would be open in each case, how much of each advancement therein aknowledged in fact had been made in money and how much had been made "in other property."

The testator, by using this language in a different sense from that in which it was employed in the agreements, would certainly be departing from the policy of preventing "misunderstanding or confusion" among his children upon the settlement of his estate, and would be doing the very thing which any fairly intelligent man, especially when aided by counsel, would see must almost inevitably result in misunderstanding, confusion and protracted litigation.

Paragraph seven as well as the other paragraphs of this will indicate the work of counsel and also indicate, as I have said before, that the language of these instruments was before the eyes of the draftsman of the will. It is possible that the testator, with these agreements before him, used the language of the agreements in a different sense from that in which it is used in the agreements when the manifest consequence would be to make "misunderstanding, confusion" and litigation highly probable.

In my opinion Mr. Vreeland intended, when he made his will, to charge as advancements not only "sums of money" which actually had been paid by him in his lifetime to his children, but also the transfers of property, whether in land or in money, or in other property which these children had solemnly agreed by instruments which he held in his possession should be deemed sums of money for the purposes of a distribution of their father's estate. I think, also, that even if it could be maintained that the original purpose of these instruments had in view only a distribution of Mr. Vreeland's estate upon his dying intestate,

nevertheless the phraseology of them is of such a form that when Mr. Vreeland came to make his will, he intentionally framed his will to meet the phraseology of the agreements. In the absence of any testimony that Mr. Vreeland ever made any other substantial transfers of property to his children besides those which have been proved in this case, it seems to me the fair conclusion is that practically the sole function of paragraph seven was to carry these instruments into effect.

I shall advise that the two conveyances be deemed payments of money to the extent stated, viz., $1,800 to J. Warren Vreeland and $2,200 to Wallace N. Vreeland. The construction which I have placed upon this will, while adverse to the interests of both the defendant, Wallace N. Vreeland, and the complainant, J. Warren Vreeland, accords with the views and wishes of the first-named son, the complainant herein, as manifested by the argument of his counsel.