# Hughes's Appeal.

1. Grandchildren whose father died before their grandfather, the intestate, take not paramount to their father but through him by representation; such estate only as he would have taken had he survived the intestate.

2. In the distribution of the grandfather's estate, the grandchildren take subject to advancements made to their father and to such debts due by him to the intestate as were recoverable when the estate descended.

3. A debt to the intestate from a distributee, is but a set-off in equity against his share, it must be recoverable at the intestate's death. An advancement is a legal abstraction in the intestate's lifetime, of that much of the distributee's share, and is not affected by lapse of time or limitation.

4. An advancement is not controlled by the same defences as prevent the recovery of debts.

5. Miller's Appeal, 4 Wright 58, and Wallace *v.* Keyser, 1 P. F. Smith 493, explained.

6. The Orphans' Court has exclusive jurisdiction over the questions of advancement and distribution.

February 6th 1868. Before THOMPSON, C. J., STRONG, AGNEW and SHARSWOOD, JJ. READ, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Philadelphia*, in the matter of the distribution of the estate of William Hughes, deceased. To July Term 1867: No. 107.

William Hughes, the decedent, died about the 18th of November 1865, leaving a widow, Mary A. Hughes, three children and three grandchildren, Charles S. Hughes, Frank Hughes and Ella C. Hughes, children of Charles D. Hughes, a deceased son. Frank and Ella are minors, Jane E. Hughes being their guardian.

Charles D. Hughes died before his father on the 8th of March 1863, being at that time indebted to his father. For this indebtedness the administrators of William Hughes recovered a

judgment for $2387.66 against the estate of Charles D. Hughes. Before the auditor (I. Newton Brown, Esq.), the grandchildren claimed that they were entitled to receive their distributive shares of their grandfather's estate without being chargeable with the debt of their father. The auditor was of this opinion, and distributed to them the share of Charles D. Hughes, their father. On exceptions to the report of the auditor, the Orphans' Court overruled his report in this and in other particulars, and charged the share which would have been Charles D. Hughes's with his debt. The guardian of the grandchildren appealed from the decree of the Orphans' Court, and, amongst others, assigned for error, that the court directed the amount of Charles D. Hughes's debt to be deducted from the distributive shares of the grandchildren.

*H. McIntyre* (with whom was *P. McCall*), for appellant, referred to Act of April 8th 1833, § 2, Art. 4, Pamph. L. 316, § 16, Pamph. L. 319, Purd. 563, 565, pl. 14, 35; 1 Bl. p. 201, 217; Ilgenfritz's Appeal, 5 Watts 25; McConkey *v.* McConkey, 9 Id. 352; Rowland *v.* Schrack, 5 Casey 125; Miller's Appeal, 4 Wright 58; Thompson's Appeal, 6 Id. 345; Haverstock *v.* Sarbach, 1 W. & S. 394; Youndt's Appeal, 1 Harris 580; Harris's Appeal, 2 Grant 305; Craig *v.* Moorhead, 8 Wright 97; Wallace *v.* Keyser, 1 P. F. Smith 498.

*J. S. Price* (with whom was *G. Junkin*), for appellee, referred to Act of April 8th 1833, Thompson's Appeal, Miller's Appeal, Ilgenfritz's Appeal, McConkey *v.* McConkey, Wallace *v.* Keyser, *supra;* Earnest *v.* Earnest, 5 Rawle 213; Carter *v.* Trueman, 7 Barr 321; Holliday *v.* Ward, 7 Harris 491.

The opinion of the court was delivered, February 13th 1868, by
AGNEW, J.—We are asked in this case to disaffirm the doctrine of McConkey *v.* McConkey, 9 Watts 302, and return to that of Ilgenfritz's Appeal, 5 Id. 25. But we think the question is not now open upon original grounds. The case of Ilgenfritz itself overlooked the decision in Earnest *v.* Earnest, 5 Rawle 213, and was immediately followed by Levering *v.* Rittenhouse, 4 Whart. 136–7, reaffirming Earnest *v.* Earnest. McConkey *v.* McConkey has therefore the weight of both those cases against Ilgenfritz's Appeal, and has recently been recognised in Wallace *v.* Keyser, 1 P. F. Smith 493. We must take it now as settled beyond recall, until the legislature chooses to alter the rule, that grandchildren whose father died before their grandfather, the intestate, take not paramount to their father, but through him by representation, such estate only as he would have taken had he survived the intestate. In the distribution of the grandfather's estate the grandchildren, therefore, take subject to the advance-

[Hughes's Appeal.]

ments made to their father, and to such debts from him to the intestate as were recoverable when the estate descended.

Considerable stress was laid in the argument upon the decision in Miller's Appeal, 4 Wright 58, and something upon what was said by myself in Wallace *v.* Keyser, *supra.* This is owing to inadvertence to the different grounds upon which debts and advancements stand. A debt is but a set-off in equity against the share of the distributee. It must therefore be one which is subsisting and recoverable at the time of the father's death, in order to constitute an available defalcation to the son's distributive share. An advancement is different, and is not affected by lapse of time or limitation. It does not operate by way of set-off or defalcation, but by a legal abstraction of that much from the child's share in the father's lifetime; therefore leaving the share that much less at his death. Operating thus by anticipation, it is not controlled by the same defences, such as infancy, limitation, &c., as prevent the recovery of debts. This exhibits the reason of the decision in Miller's Appeal. The sum in controversy there, to wit, $952.98, was found by the auditor to be not recoverable as a debt, and hence the attempt was made to convert it into an advancement. This led to a discussion of the question of advancement in this court, and the conclusion that this sum was not of that character, and therefore it was held not to be chargeable against the son's share. But that part of the charge contained in the father's book, which was made after the son arrived at age, was found by the auditor to be an available debt, and hence it was charged against his share. This distinction also explains the remark made in Wallace *v.* Keyser, upon the effect of the 16th section of the Intestate Law. In that case the brothers and sisters of two of the sons of the intestate were endeavoring, by a bill in equity, to control the proceeds of a private sale by the sons of their interest in their father's real estate, on the ground of a debt due by them to their father's estate. The 16th section, which relates only to advancements and settlements, was held not to apply to such a case, the debt being no advancement, and not even a lien. And I may now add what was omitted to be said in Wallace *v.* Keyser, the Orphans' Court has exclusive jurisdiction over the questions of advancement and distribution: Holliday *v.* Ward, 7 Harris 485; Ashford *v.* Ewing, 1 Casey 213. The proceeding in Wallace *v.* Keyser was a bill in equity in the Court of Common Pleas.

The other assignments of error in this case need no special notice, except to say that they appear to be unfounded.

Decree of the Orphans' Court affirmed, and the costs ordered to be paid by the appellant.