CALLICOTT NORFLEET ET AL., EXECUTORS, v. KATE CALLI-
COTT ET AL.

[43 South., 616.]

1. WILLS. *Code* 1892, § 4496. *Renunciation by widow. Rights of devisees.*

Where a testator devised his homestead to his widow and directed that a sum of money should be invested, the income therefrom to be paid her during her life or widowhood and at her death or marriage the money divided between her three children by the testator, and the widow renounced the will, as authorized by Code 1892, § 4496, the homestead became a part of the general estate but the money went to the three children named.

2. SAME. *Rights of devisees. Ademption of legacy.*

A devise of money is adeemed if after the writing of the will the legatee receive from the testator the sum of money named, executing a receipt in full for her interest in the estate, though the will remained unchanged.

3. SAME. *Advancement. Receipts. Relinquishment of right in estate.*

Where a testator during his life made advancements to his adult children, taking receipts from them in full of their interest in his estate, the receipts are in the nature of· contracts and extinguish the rights of the parties giving them, and of their heirs, in testator's estate.

4. SAME. *Widow's right. Renunciation of will.*

Where three of six children of a decedent received advancements from him and gave contractual receipts extinguishing all their right in his estate, his widow by renouncing his will, under Code 1892, § 4496, authorizing such renunciation, became entitled to one-fourth of the estate.

5. SAME. *Descent and distribution. Statutory construction. Code* 1892, §§ 1545, 4496.

Code 1892, §§ 1545, 4496, the one section regulating the descent of property between husband and wife and the other providing for the renunciation of a will by the widow of the testator, must be construed together, and the word "child" as used in the former means such child as shall have a right under the law to share in the estate of his intestate father, and does not include children who have contracted away the right.

FROM the chancery court of Tate county.

HON. JULIAN C. WILSON, Chancellor.

Norfleet and others, executors of the last will and testament of J. C. Callicott, deceased, were complainants in the court below; Mrs. Callicott, widow of the decedent, and others, the appellees, were defendants there.

From the decree of the court below, the complainants, the executors, appealed to the supreme court for the purpose of obtaining a conclusive decision of the questions involved.

The executors of the will of J. C. Callicott, deceased, after having paid all debts against the estate, filed a bill in chancery asking the court to construe the will on which they acted and to give them directions as to the proper distribution of the estate. By the provisions of the testator's will he bequeathed the homestead to his wife, Kate B. Callicott, and directed the executors to set aside the sum of $15,000 as a trust fund to be invested for the benefit of his widow during her widowhood or natural life, which sum upon her death or marriage was to be divided among his children by his said wife. The will recites that he had already given to his two children, Henry M. Callicott and Calloway Callicott, children by a former marriage, the sum of $30,000 each in full of their interest in his estate, for which he had taken their receipts. He then devised to his daughter, Minnie Boone, also a child by a former marriage, the sum of $16,000, which, in addition to that already given her, made the total of $30,000, as her portion of his estate. He died intestate as to the remainder of his estate. After the making of the will, but before the death of the testator, Minnie Boone received from him the sum of $16,000, devised to her in the will, and gave receipt in full for $30,000, her interest in the estate. The will, however, remained unchanged. Henry M. Callicott, one of the sons, to whom the testator had given $30,000 in his lifetime, died before the date of the will, leaving children. The widow renounced the will and elected to take a child's part in the estate.

The following questions were presented to the court for determination:    (1) Were the children of Henry M. Callicott, deceased, cut off by his receipt for $30,000 from further participation in J. C. Callicott's estate?    Or, Henry M. Callicott having died before the will was written, do his children inherit directly from the testator a share or portion of his property not devised or disposed of by his will?    (2) The widow having renounced the will and having elected to take a child's share in the estate, the question arose as to what was a child's share under the facts in this case, there being six children in all, three by a former marriage and three by the last:    Does the widow take a one-seventh interest in the property, or does the fact of the testator's having provided for his three older children in his lifetime, thereby excluding them from participating in the distribution of his estate, entitle her to a share equal to that of the three children by the last marriage, which would be a one-fourth interest?    (3) What was the effect of the receipts given by the three children by the former marriage, and did these receipts bar them from further participation in the testator's estate?

The court below decreed that the legacy of $16,000 to Minnie Boone was adeemed in the lifetime of the testator, and that the receipts executed by her and by the two older sons for $30,000 each, in full of their interest in the testator's estate, barred them from further participation in the distribution of the testator's property; that the heirs of Henry M. Callicott should not participate in the distribution of the estate, because of the paying of the $30,000 to him in his lifetime; that the widow, Mrs. Kate B. Callicott, took a one-fourth interest in the property of the estate, being an interest equal to the share of each of the three minor children, and that the executors should distribute the property accordingly.

*J. F. Dean,* and *St. John Waddell,* for appellants.

The appellants are interested in the proper settlement of the

question of law which arises in reference to the performance of their duties, and as there are several minors interested in the estate, and the responsibility resting on them is very great, they excepted to the decree of the chancellor on the questions involved, and have appealed to this court for the purpose of obtaining a conclusive decision of the same and have assigned error accordingly.

*N. A. Taylor,* for appellee, Kate N. Callicott.

The chief question presented relates to the view to be taken of the contracts made by the testator with his three older children by his first marriage, viz.: Henry and Calloway Callicott and Minnie Boone, all adult married children. Are they contracts of release and settlement in full of their interests in his estate, as his heirs, in consideration of his present cash payment, and their acceptance of certain amounts as representing their full interest in his estate, and which exclude them from being considered in further distribution, as held by the chancellor; or are they mere receipts for such payments as advancements to them and which leave them free to share further in distribution upon accounting for the amount received and that as of the value when received without interest or accounting for profits derived from its use? If releases, are they valid and enforceable as such in equity in the distribution of the estate?

That these sums of money, $30,000 to each, were not made and received as mere advancements allowing these children to share further in the distribution of his estate in the event of his dying intestate, the only condition in which they would be of any force or in distribution among his heirs, is clearly shown by the papers themselves and the situation and surroundings of the parties that rendered the creation of such papers desirable or important.

If a mere advancement was intended, which is defined to be "an irrevocable gift *in præsenti* of money or property, real or

personal, to a child by a parent to enable the donee to anticipate his inheritance to the extent of the gift" (14 Cyc. B., 162), no such papers were required.

No participation or action on the part of an heir would be required in such case beyond the mere reception of the money or property advanced. He, in such case, need not sign any contract or relinquish or release any right he held as heir. He need not even know at the time the purpose for which the payment was made to him—whether as a gift or something he would be charged for and have to account for in the distribution or not. The father alone knowing this and the true character of the transaction appearing, then or later, as the father might intend and make manifest in any of a variety of ways.

Such is not, quite evidently, the transaction here disclosed between the father and his children in which both participate. Something more than a mere advancement of a certain amount of his estate on his side and its reception on theirs is shown. A contract is made that such payments were to be the full shares of these children in his estate.

The making of such a contract is utterly at variance with the idea of a mere advancement.

In advancements there is always existent, regardless of the amount paid, the possibility of the heir receiving more of the estate in case of the father dying intestate. He may not, in fact, receive more. The amount he has received in the parent's lifetime and the size of the estate to be distributed at his death may prevent it. But that is all that can defeat it. He has not lost or surrendered any right as heir to share in distribution, should the condition of the estate of his father at death intestate enable him to do so, and this is reserved and postponed for future consideration.

But in case of a release there is a present fixing and determination of the amount of the heir's share of the estate, the reception of which as such virtually extinguishes him as an heir of the estate. This was the precise end sought for in

this contract and constitutes the essential difference from an advancement. *Newsome* v. *Cogburn,* 30 Ga., 291; *Bishop* v. *Davenport,* 58 Ill., 106; *Kinney* v. *Tucker,* 8 Mass., 143; *Fitch* v. *Fitch,* 8 Pick., 479; *Nesmith* v. *Dinsmore,* 17 N. H., 575; *Parsons* v. *Ely,* 45 Ill., 232; Story's Eq. Jur., sec. 10406; *Havens* v. *Thompson,* 26 N. J. Eq., 383; *Kershaw* v. *Kershaw,* 102 Ill., 307; *Galbraith* v. *McLain,* 84 Ill., 379.

"An heir may release his expectancy in his father's estate in consideration of a present grant, and such agreement will be enforced, so that he cannot bring what he has received into hotchpot and get more in distribution." 2 Woerner's Law of Administration, *p. 1220, citing cases from Illinois, New Jersey, New Hampshire, Massachusetts, Indiana, West Virginia, California and Tennessee, as follows: *Kershaw* v. *Kershaw,* 102 Ill., 307; *Simpson* v. *Simpson,* 114 Ill., 603, 609 (4 N. E., 137, and 7 N. E., 287); *Green* v. *Hathaway,* 36 N. J. Eq., 471; *DeWitt* v. *Brands,* 10 Atl. R., 181 (6 Am. St. Rep., 909); *Quarles* v. *Quarles,* 4 Mass., 680; *Havens* v. *Thompson,* 26 N. J., 383; *Nesmith* v. *Dinsmore,* 17 N. H., 515, 517; *Brown* v. *Brown,* 139 Ind., 653; *Roberts* v. *Coleman,* 37 W. Va., 143, 155; *In re Garcelon,* 104 Cal., 570 (32 L. R. A., 595); *Gove* v. *Howard,* 94 Tenn., 577; *Coffman* v. *Coffman,* 41 W. Va., 8 (23 S. E., 523); also to the same effect, 20 Am. & Eng. Ency. L. (1st ed.), 750 and note 4 citing *Brands* v. *DeWitt,* 44 N. J. Eq., 545 (6 Am. St. Rep., 909); *Curtis* v. *Curtis,* 40 Me., 24 (63 Am. Dec., 651); *Crum* v. *Sawyer,* 132 Ill., 443—to the effect that relinquishment is for the benefit of the other heirs, and other cases.

"An heir at law may, for a sufficient consideration, release to his father a share which he might have at the parent's decease in his estate, either real or personal, so that he will be thereby estopped from establishing any claim thereto as one of his heirs at law or next of kin. Such releases, however, when they concern lands, are subject to the statute of frauds, and un-

less they are in writing cannot be enforced." 24 Am. & Eng. Ency. L. (2d ed.), 30, and notes citing numerous cases.

"According to the weight of authority the release of an expectant share to an ancestor, in consideration of an advancement of further valuable consideration, excludes the heir from participating in the ancestor's estate at his death, provided the person executing the release was not obtained by means of fraud or undue influence." 14 Cyc., 91, and N. 8 and 9, citing numerous cases from Georgia, Illinois, Kentucky, Massachusetts, New Jersey, North Carolina, Pennsylvania and West Virginia, among them, *Barham* v. *McKneely,* 89 Ga., 812 (15 S. E., 761; *Newsome* v. *Cogburn,* 30 Ga., 291; *Simpson* v. *Simpson,* 114 Ill., 603 (4 N. E., 137, and 7 N. E., 287); *Kershaw* v. *Kershaw,* 102 Ill., 307; *Galbraith* v. *McLain,* 84 Ill., 379; *Bishop* v. *Davenport,* 58 Ill., 105; *Curtis* v. *Curtis,* 40 Me., 24 (63 Am. Dec., 651); *Truell* v. *Eastman,* 3 Metc. (Mass.), 121 (37 Am. Dec., 126); *Brands* v. *DeWitt,* 44 N. J. Eq., 545 (6 Am. St. Rep. 909); *Havens* v. *Thompson,* 26 N. J. Eq., 383; *Powers' Appeal,* 63 Pa. St., 443; *Coffman* v. *Coffman,* 41 W. Va., 118 (23 S. E., 523); *Roberts* v. *Coleman,* 37 W. Va., 143 (13 S. E., 482).

*In re Garcelon,* 104 Cal., 570, citing among the above cases (32 L. R. A., 595–605), there is a very full discussion of such contracts. While the transaction was not between father and child, as in this case, it was between an aunt and her heir-at-law —complainant—and in the elaborate discussion in the case and in the notes the validity of releases between father and children is fully considered. Most of the cases discussed are of such character.

In the leading case—notwithstanding the statutes in that state, California, to the effect that "a mere expectancy of an heir was not to be deemed an interest of any kind," and that it, "not coupled with an interest could not be transferred"— the court held that such statutes were merely declaratory of the common law on such subject and were never intended to over-

turn long established equitable principles sustaining such trans-
actions, and quotes from Story Eq. Jur., vol. 2, sec. 1040 c,
and Pom. Eq. Jur. (2d ed.), sec. 168, as follows:—

"So even the naked possibility or expectancy of an heir to
an ancestor's estate may become the subject of a contract of
sale or settlement; and in such cases, if made *bona fide* for a
valuable consideration, it will be enforced in equity after the
death of the ancestor, not indeed as a trust attaching to the
estate, but as a right of contract." The court approves of such
principle and discusses a number of cases—pages 602–603—
*Bacon* v. *Branham,* 33 N. J. Eq., 614; *Havens* v. *Thompson,*
26 N. J. Eq., 383; *Brands* v. *DeWitt,* 44 N. J. Eq., 545 (6
Am. St. Rep.); *Bishop* v. *Davenport,* 58 Ill., 105; *Kershaw*
v. *Kershaw,* 102 Ill., 307; *Crum* v. *Sawyer,* 132 Ill., 443;
*Powers' Appeal,* 63 Pa., 443, as holding to the same doctrine.
In the principal case the receipt or release by the heir is formal
and full; but in a number of cases cited above and in those
discussed in the notes it will be seen that they were held to be
such though not as full as in the case before the court. The
only essential element being the statement that the heir had
received his full share of the father's estate.

The notes to the case in 32 L. R. A., 595–605 on the sub-
ject of the "Validity of transactions between an heir and his
ancestor relating to the former's expectancy" will be found to
be exceptionally full and able and as sustaining in the cases
cited in nearly all of the states—with few cases to the contrary
—the doctrine contended for in this case.

*A. W. Shands,* for appellee Flavia Callicott and C. G. Calli-
cott.

At common law it is admitted by all parties that an expect-
ant heir could not release his interest in the estate of his ances-
tor. The reason (and it is a plausible one) is that no man
is heir to those living and it is possible that a child may not
become the heir of his parent and therefore he has nothing to

release. This is based upon the most elementary and funda-
mental principle known to the common law. That this is the
rule at common law is universally conceded, as is set out in the
beginning of the note on page 578, vol. 65, L. R. A., and I
have not, although I have made diligent search of all the au-
thorities, found anywhere an announcement that this is not
the rule under the common law. This being true, I contend
that without going further we are entitled to a reversal of
this case, for it has been many times announced by our court
that the common law of England, except where it has been
changed by statute, is in force in the state of Mississippi.
*Hemingway, Admr., v. Scales,* 42 Miss., 1; *Hollman* v. *Ben-
nett,* 44 Miss., 322.

Not only was this the rule at common law, and should there-
fore in the absence of any statute changing the rule in Mississ-
ippi be followed by this court, but it is also in this case the rea-
sonable, just and right principle to be followed in order that
equity may be done.

It appears that J. C. Callicott had in property not dis-
posed of by his will, not needed for the expenses of the ad-
ministration, and after payment of all specific legacies, the
sum of $140,000 as to which he died intestate. It is now
contended by Kate M. Callicott, the widow, who renounced the
will, and by the guardian *ad litem* of the three minor chil-
dren, that the other children, including Calloway Callicott,
have no right to participate in the distribution of this fund,
claiming in effect that Calloway Callicott was disinherited;
and certainly for this court to hold that he is not entitled to
share, the court must *ipso facto* hold that he was disinherited.
Now let's see if he was. The will makes specific provision
for the widow and specific provision for the three minor chil-
dren, using the following language as to Calloway Callicott:—

"Item 4th. I have heretofore given to my two sons, H. M.
and Calloway Callicott, the sum of $30,000 each, this being
in full of their entire portion and interest in my estate evi-

denced by their receipts which may be found with my papers in the safe at Veazey, Clark & Co., Coldwater, Miss."

The receipt is in the following language :—

"Coldwater, Miss., May 8th, 1899. Received of J. C. Callicott, my father, $30,000, in full of all claims and demands against him or his estate such as he may provide for me in his will."

The court's special attention is called to the fact that there is no residuary clause in this will. It is held by numerous decisions that disherison will never be worked except in cases where the property is given by the will to some one other than the heir, and it must be given by language that is express or it must be by necessary implication, and language so clear that an intention to the contrary cannot be presumed. *Coffman* v. *Heatnole,* 2 L. R. A., 848, which holds that a will revoking all other wills, made by the testator, and declaring that a certain son shall be excluded from participating in the estate because he has become heir to some other property, and the testator is about to make a final settlement giving him as much as the estate would pay to the other legal heirs, is not sufficient to exclude such son from participation in the estate, but is a nullity where no provision is made for giving the estate to anybody else. See also to the same effect: *Boisseau* v. *Aldridge,* 5 Leigh., 222; *Wright* v. *Hicks,* 12 Ga., 155, 56 Am. Dec., 457; *Doe* v. *Lanius,* 3 Ind., 441, 56 Am. Dec., 518 and notes on p. 521; *Blackman* v. *Gorden,* 44 Am. Dec., 241; *Hall* v. *Hall,* 2 McCord, ch. 269; *Roberts* v. *Ogbourne,* 37 Ala., 174; *Parish* v. *Parish,* 37 Ala., 591; *Cleveland* v. *Chamberlain,* 22 Md., 308; *Olmstead* v. *Olmstead,* 4 N. Y., 56; *Shutt* v. *Rambo,* 57 Pa., 149; *Bacon's Appeal, Id.,* 504; *McKenzie* v. *Jones,* 39 Miss., 203; *Steiner* v. *Kolb,* 57 Pa., 123; Wigram on Wills, p. 78.

The language in this will not being sufficient to disinherit, using the word in its technical sense, Calloway Callicott had a right to share in this property of which his father died intes-

tate unless the receipt is operative to bar him. . Upon this question there is a hopeless conflict of authorities in other states, but the question is virgin in Mississippi.

*Holmes & Holmes,* for the infant appellees.

(1) Acceleration of enjoyment of $15,000 legacy:—*Vance Estate* (Penn.), 12 L. R. A., 227; Page on Wills, secs. 737, 802; *Rawlins Estate,* 81 Iowa, 701; *Marvin v. Sedwith,* 111 Ill., 430; *Slocum v. Hagaman,* 176 Ill., 533; *Ross v. Ross,* 85 Md., 430; *Schoultz Estate,* 113 Mich., 592; 2 Law of Wills (Underhill), secs. 866, 878, note.

(2) Validity of Releases. 2 Am. & Eng. Dec. in Eq., 229; *Garcelon's Estate,* 104 Cal., 570, s.c. 32. L. R. A., 595 and notes cited; *Simpson v. Simpson,* 114 Ill., 603.

(3) Boone Legacy—Adeemed—more properly—Satisfied. Underhill on Wills, sec. 440; parol evidence always competent to show satisfaction of legacy by subsequent portion. Proof is full, clear and convincing.

Argued orally by *Herbert Holmes, N. A. Taylor, W. J. East, J. C. Holmes,* for appellees.

WHITFIELD, C. J., delivered the opinion of the court.

We have given this case the most careful consideration, and we think the learned chancellor below decided every point in it correctly. His decree is in the following words, so far as it relates to the points decided; the chancellor holding:

First: "That the proper interpretation and construction of the will of J. C. Callicott, deceased, is to the effect that said deceased by said will devised to his widow, the said Mrs. Kate B. Callicott, absolutely, the homestead and personal property as mentioned in his said will, and further devised her in trust the income from $15,000 during the term of her natural life or widowhood, and that at her death or marriage the same should go to his minor children, Lamar, Norfleet, and J. C. Callicott, as stated in said will, and that he made no other dis-

position of any other property owned by him in his said will, except the legacy of $16,000, which he therein bequeathed to his daughter, Minnie Boone, and that, his said widow having renounced said will, its only effect is to devise said $15,000 to his said three minor children; said legacy for $16,000 having been adeemed as hereinafter mentioned, and said homestead reverting to and becoming a part of his general estate."

Second. "It further appears to the satisfaction of the court that the evidence introduced establishes conclusively the fact that said testator, J. C. Callicott, in his lifetime adeemed the legacy of $16,000 bequeathed to his daughter, the said Minnie Boone, in said will, by paying to R. B. Lawler, for her, said sum of $16,000 on the purchase of a plantation in Bolivar county, Miss., which it is shown by the evidence was purchased and a deed to same being taken in the name of her and her husband, to be by them conveyed to their children then living and to any other children which might be thereafter born to her, and that in so paying said money he did so with the knowledge and consent of the said Mrs. Minnie Boone, for the purpose of adeeming said legacy and extinguishing same; and it is therefore hereby decreed that said legacy of $16,000, as devised to said Mrs. Minnie Boone in said will, was adeemed by said testator in his lifetime, and forever satisfied and discharged, and the executors of said will, who are complainants herein, are directed not to pay said legacy, but to disregard it in the further distribution of said estate."

Third. "It further appears to the satisfaction of the court from evidence in this case that said testator in his lifetime paid to each of his three children by a former marriage, to-wit, Calloway Callicott, Henry M. Callicott, and Minnie Boone, the sum of $30,000 each in full settlement and extinguishment of all their right to and claim against him as heirs to his said estate, and to all further interest in and demands against his estate, and as distributees of same after his death, and that the different receipts introduced as evidence herein by the executors

were in the nature of a contract between said testator in his lifetime and said three children to this fact, and were so accepted by them, and have been so acted on by him, and for that reason he failed to make any residuary clause in his said will, and died intestate as to all his estate except that above mentioned, which he specifically devised therein, and that by so paying said money to said three children and taking their receipts for same, evidencing same, he extinguished all their right or claim against his estate as heirs thereto, and that they and each of them are forever estopped from setting up or claiming any further rights in his estate as heirs of same or as distributees thereof, and that they, the said Mrs. Minnie Boone, and defendant Mrs. Flavia Callicott and C. G. Callicott, the widow and only child of Calloway Callicott, deceased, Mrs. Jessie Townsend, Mrs. Lillian House, and Macon and Arthur Carver Callicott, former widow and only children of Henry M. Callicott, deceased, are not to be regarded or counted in the distribution of said estate as heirs of J. C. Callicott, deceased, or distributees of his estate, and that they, nor either of them, do take any interest whatever in the estate of said testator now in the hands of said executors to be distributed. All of which is decreed, and said executors are directed not to distribute anything from said estate to either of said defendants, the said Minnie Boone, Mrs. Flavia Callicott, C. G. Callicott, Mrs. Lillian House, Mrs. Jessie Townsend, Arthur Carver Callicott, and Macon Callicott."

Fourth. "It is further ordered and decreed that defendant Mrs. Kate B. Callicott, the widow of said testator, is entiled to, and her interest in all the estate which the said testator died seised and possessed of be, and the same is hereby, fixed and decreed to be, an undivided one-fourth part thereof after the payment out of said estate of the costs and expenses herein and hereafter mentioned, and that, after this one-fourth interest of said defendant Kate B. Callicott is paid to her, then that there shall be set apart from the remaining three-fourths of the assets

of said estate the sum of $15,000, which shall be paid over by said executors under the will to the guardian of said three minor children of the testator, to-wit, Lamar, Norfleet, and J. C. Callicott, same to be held by said guardian for said three minor children under the terms of said will, and that after the payment of said $15,000 the remainder of said undivided three-fourths interest in all of the assets of said estate is hereby decreed to go to said three minor defendants, Lamar, Norfleet, and J. C. Callicott, share and share alike. This will disposes of all the assets belonging to the estate of said testator and now in the hands of said executors, and the interest in said assets of the said Kate B. Callicott, and of her three minor children, Lamar, Norfleet, and J. C. Callicott, in the same case, is hereby fixed accordingly, and said executors are authorized and directed by the court to distribute the same to them accordingly in making final settlement of said estate, taking their proper receipts for same, paying over the interest of said three minors to their guardian."

Section 4496 of the Annotated Code of 1892 and section 1545 of the same code must be construed together. The word "child" in section 1545 means such child as shall have a right under the law to share in estate left by his intestate father. It can never, in a case like this, include children who have been portioned off, and who have contracted with their father by written releases that they have no further interest in his estate.

*In the foregoing decree all the points here brought into contest are presented and correctly decided. Wherefore the decree is affirmed.*