R. M. ADAMS *v.* MRS. MINNIE YANCY ET AL.

[62 South. 229.]

1. DESCENT AND DISTRIBUTION. *Heirs. Children of deceased child.*

Grandchildren whose father died before their grandfather, the intestate, take not paramount to their father, but through him by representation, such estate as only he would have taken, had he survived the intestate, and in the distribution of the grandfather's estate, the grandchildren, therefore, take subject to the advancements made to their father, and to such debts from him to the intestate as were recoverable when the estate descended.

2. SAME.

A note given by a son to the father is not of itself evidence of an advancement by the father but is evidence of an indebtedness by the son.

APPEAL from the chancery court of Tippah county.
HON. D. M. KIMBROUGH, Chancellor.

R. M. Adams as administrator of T. B. Weir, deceased, filed his final account, to which Mrs. Mamie Young and others excepted. From a decree for exceptants, the administrator appealed.

T. B. Weir died intestate in Tippah county, Miss., leaving as his heirs at law his four daughters and the six children of a son, R. A. Weir, who had died about two years before. Appellant, who was appointed administrator of the estate of said T. B. Weir, filed his final account, showing that he had as a part of the assets of the estate of T. B. Weir a note executed by R. A. Weir several years prior to his death in favor of his father, T. B. Weir, which was unpaid, and the amount of which, together with interest, would exceed the distributive share of said R. A. Weir (or his children, who were his heirs), and asked to be allowed to offset the claim of said children against the estate of T. B. Weir with the amount

of the note of their father, R. A. Weir. Said children (appellees here) filed exceptions to the final account of the administrator, and denied that said note ought to be used against them in right to their respective shares in their grandfather's estate. The administrator reported to the court that, after an investigation, he found that the said note of R. A. Weir was uncollectible at law. The court entered a decree sustaining the position of the contestants, and decreeing that they were entitled to a distributive share in the estate of their grandfather, without regard to said note which could not be held as an offset against them. From this decree this appeal is prosecuted.

*Thos. E. Pegram,* for appellants.

Section 1543 of the Code of 1892 provides that: "When any person shall die seized of any inheritance in lands, tenements, or hereditaments not devised, the same shall descend to his or her children and their descendants in equal parts, the descendants of the deceased child or grandchild to take the share of the deceased parent among them. . . ."

Section 1547 of the same code provides that undevised personal property shall descend to and be distributed among the heirs of the deceased in the same manner that undevised realty descends.

In the instant case the court is called on to construe this particular portion of the above section of the Code, namely: "the descendants of the deceased child or grandchild to take the share of the deceased parent in equal parts among them." If there are no contracts or obligations entered into between the deceased parent and the intestate which affect such share, such as advancements or debts from the deceased parent to the intestate, no trouble arises in the administration of estates in determining what "the share of the deceased parent" really is; but if the parent, during his life time, burdens the

share that he is to receive from the intestate by receiving advancements, or by becoming indebted to the intestate, a difficulty arises, namely, are the children of the deceased parent to take the share burdened by these obligations of the parent; or are they to take it independent of, and freed from, such burdens? To state the proposition differently: Are the children of the deceased parent to take that portion of the estate that their parent would have actually received had such parent been alive at the time of the intestate's death; or do they take their parent's *pro rata* of the estate just as though it never had been burdened by him during his life time? Appellants insist that the language of the statute, namely, "the share of the deceased parent," means that portion of the estate which such parent would have been entitled to had he been living at the time the property descended.

At common law, the fourth rule, or canon of descent was this: "That the lineal descendants infinitum of any person, deceased, shall represent their ancestor; that is, shall stand in the same place as the person himself would have done had he been living. And these representatives shall take neither more nor less, but just so much as their principals would have done." 1 Cooley's Blackstone (4th Ed.), 607, 608; 24 Am. & Eng. Ency. of Law (1st Ed.), 378, 379.

The above is called succession or inheritance by representation of *per stirpes.* The statute of descents, now under consideration, is substantially a repetition of the fourth rule, or canon of descents, above quoted. In the case of *Scott* v. *Terry,* 35 Miss. 65 at the close of the third paragraph on page 69, the court used this language in construing this statute, to wit: "The descendants shall represent and be entitled to their respective parent's share." Under our statute, property never descends to the grandchildren of the intestate *per capita,* notwithstanding the fact that all of the children of the intestate might be dead, which is another indication that

our lawmakers intended to emphasize the doctrine of inheritance *per stirpes,* or inheritance by representation. *Marvin* v. *Bowlby,* 142 Mich. 245, 4 L. R. A. (N. S.), 189, 7 Am. & Eng. Ann. Cases, 559; 14 Cyc. 121, and footnotes; 18 Cyc. 621, and footnotes; *Norfleet* v. *Callicut,* 90 Miss. 221, 43 So. 616; *Hughes Appeal,* 57 Pa. St. 179; *Batton* v. *Allen* (N. J.), 1 Halsted's Chancery, 99, 43 Am. Dec. 630; *Fletcher* v. *Wormington,* 24 Kan. 259; *Head* v. *Spear* (Kan.), 71 Pac. 834; *Smith* v. *Lynch,* 61 Kan. 609.

It does not seem that a court of equity and good conscience, in ordering a distribution of the estate of T. B. Wier, would, as it beyond a doubt will, look to a just and fair distribution of the same among his heirs; that such a court would not make an order that would have the effect of giving to one of the heirs (or a set of heirs) more than twice as much from the estate as other heirs in the same degree of relationship severally receive. Is it equity that R. A. Weir, during the life of himself and father, be allowed to receive a sum of money greater than one fifth of the father's estate, greater than his share of the estate, and then, merely because he dies before his father, his children, who represent him and stand in his stead so far as the distribution is concerned, come along and, by reason of our statute, which says that they shall take his share among them, procure still another share in the estate? If the harsh and inequitable decree of the lower court be permitted to stand, R. A. Wier and his children who represent him and stand in his place, received from the estate of T. B. Wier, more than twice as much as either of the daughters of T. B. Wier, who are the full sisters of R. A. Wier and who are joint heirs with the brother, R. A. Wier.

In the court below, though it was not mentioned in the exceptions to the final account, it was contended that, since the heirs of R. A. Wier include his wife, and since the administrator here is seeking to set off only the claims

of the children of R. A. Wier in the estate of T. B. Wier
by a debt due from the said R. A. Wier, there is a want
of mutuality, and therefore set-off cannot be pleaded.
The authorities practically agree that the term "set-off"
is very inaccurately used in this kind of case. Some of
them insist that the term "right of retainer" is the bet-
ter term. See *Stokes* v. *Stokes, supra;* Cheyney's Ap-
peal (Pa.), 23 Atl. 1053.

The contention of appellants is, that the amount that
R. A. Wier owed to his father at the time of his death,
and at the time of the father's death, is more than a mere
set off against his distributive share in the estate, whether
this distributive share may have descended to him in
person or to his representatives. Under the broad prin-
ciples of equity it may be said that the administrator
might use the amount due on this note in determining
what R. A. Wier's real interest or share in the estate of
his father was at the time of the father's death. In other
words, no property could justly descend to R. A. Wier
or his representatives or his assigns until his debt to the
estate was paid. If this is a set-off, it is certainly an
equitable set-off, and on the question of mutuality in
equitable set-off, the court's attention is directed to a dis-
cussion in 34 Cyc. 633-641; *Hall* v. *Wardell,* 78 Miss. 16.

On the question as to whether or not the note under
consideration is barred by the statute of limitations of the
state of Texas, appellants submit the following: It will
be borne in mind, as is conclusively shown by the proof,
that the note is a Mississippi contract, made, executed,
and delivered in Tippah county, Mississippi. We submit
that no Texas statute can affect or have anything to do
with the question. It is a Mississippi contract, and the
rights of the parties to this suit, based on the execution
of the said note, are now being adjudicated by Missis-
sippi courts. These questions are fully settled and ad-
judicated in the following cases: *Kennard* v. *Alston,* 62
Miss. 763; *Roberson* v. *Moore,* 76 Miss. 89. Again, sec-

tion 2556a of the Code of 1892 (3117 of the Code of 1906), has direct bearing on this question. *Feld* v. *Coleman,* 72 Miss. 545.

*Spight & Street,* for appellees.

Our ground of contention is want of mutuality between the claims of the estate of T. B. Weir against his deceased son, and the interest of appellees in their grandfather's estate. And it was a matter of small concern to us in this connection what difference there may be between technical set-off and "right of retainer."

The right of set-off is statutory and is permissible only where there are mutual dealings between the parties, Code 1906, Sec. 745; 25 Am. & Eng. Enc. 519, subdiv., "Requirement of Mutuality," and note 2, page 520; Ib. page 521, sec. 4; Ib. page 523, sec. 5, note.

It has not been, and cannot be, successfully controverted, that upon the death of T. B. Weir his estate, real and personal, vested instantly in his heirs-at-law, subject only to payment of debts due from T. B. Weir and the costs of administration. This much is settled by the statute. These exceptants, appellees here, the grandchildren of T. B. Weir are just as much his heirs as are his four living daughters. The statute defines the joint interests of these grandchildren by declaring that their joint interest shall be what their father's would have been entitled to if he had lived until the death of their grandfather. This is what is sometimes called taking "by representation." It is as much as to say in effect, in the instant case, that these grandchildren shall have one fifth of their grandfather's estate, and one-fifth each shall go to his living daughters, all subject to the payment of the debts of T. B. Weir and the costs of administering his estate. The sense in which these grandchildren take "by representation" is only to fix the joint share of all of them, and cannot be held to mean that they take their father's share subject to his debts.

In the well considered case of *Sedgwick* v. *Minot, Jr.,* 6 Allen (Mass.), 171, the court in discussing this very question uses this plain strong language: "The statute made them entitled to take the share which their mother would have taken if she had lived, as representing her in the line of descent; but the inheritance was directly from their grandmother.

The representation is only to fix the share which they shall inherit. *Kendall* v. *Mondell,* 67 Md. 444.

It is wholly unnecessary in this connection to discuss the difference between *per stirpes* and *per capita.* These grandchildren take *per stirpes* and *per capita* from their grandfather's estate and *per capita* as amongst themselves. The authorities referred to in the brief for appellant along this line have really no bearing on the question here at issue. The court will understand that the leading question here involved is as to whether or not the share of these grandchildren of T. B. Weir is subject to an indebtedness of their father, R. A. Weir, to their grandfather, T. B. Weir. So far as the Mississippi court is concerned this is a question of first impression. It may appear strange, but it is true nevertheless, that the supreme court of Mississippi has never passed upon it. The case of *Norfleet* v. *Callicut,* 90 Miss. 21, cited in brief for appellant does not touch the question involved here as is shown clearly in the opinion of the chancellor, which was adopted by the supreme court in deciding the case on appeal. It will be observed by an examination of that case that it was one of advancement in full during the lifetime of both father and son. It is not pretended in the case at bar that the question of advancements is involved here. The only question before the court in the case of *Norfleet* v. *Callicut* was as to whether a living son or daughter was estopped by his own voluntary written contract upon a consideration, moving at the time, to set up any claim to a prospective interest in the estate of his father. This was determined in the affirmative upon the

distinct ground as stated by Chancellor Wilson that the receipts signed and delivered by their children to their father while all were living, acknowledging that the sums of money paid them should be in full settlement of all their right and claim against his estate before or after his death, "were in the nature of a contract between the father during his lifetime and his children." And that "said children are forever estopped from setting up or claiming any further right in his estate as heirs of same or distributees thereof." In that case it was held that the children of one of the sons of their grandfather were also bound and estopped by the written contract of their father executed in his lifetime. Chief Justice Whitfield in a short paragraph, which he added to the opinion of the chancellor, declared that all were estopped because they had "contracted with their father by written releases that they had no further interest in his estate." In all the cases which hold in accordance with our Mississippi court on this question of estoppel by contract, the ruling is based solely upon the idea of the validity and binding effect of a voluntary written contract free from fraud or undue influence, and no case can be found where such a ruling has been made in the absence of such written contract. It is idle therefore to contend that the case of *Norfleet* v. *Callicut* has any bearing on the case at bar.

In the case of *Marvin* v. *Bolby,* 4 L. R. A. (N. S.) 189, referred to in the brief for appellants and the citations from 15 Cyc. are only to the effect that the administrator has the right to apply the distributive share of an heir in payment of a debt due the estate by the heir. This is not a debt which the grandchildren of T. B. Weir owed their grandfather. If such were the case a wholly different question would arise, about which the grandchildren of T. B. Weir owed their grandfather. If such were the case a wholly different question would arise, about which there is some conflict in the authorities. It is not conflict in the authorities. It is not contended that these

grandchildren, who became heirs of T. B. Weir, imme-- diately upon his death, ever owed their grandfather one cent, and our contention is that they are not required to pay their father's debts to anybody before they are en- titled to receive their share of an estate which descends. to them by operation of law. The courts of states where the question has been adjudicated are not in harmony. The first case involving this case directly which is relied on in the brief for appellants, is *Hughes Appeal,* 57 Pa. 175, which overrules the prior case of *Ilgenfritz,* 5 Watts. (Pa.), 25, so that we concede the last expression of the· Pennsylvania court to which our attention has been called is against our contention in this case, although in that state the decisions are not harmonious. The question has. been decided both ways. The *Hughes case* was decided in 1868 and seems to have been controlled more by the doctrine of *stare decisis* than the merits of the contro- versy. Two other cases having intervened between the case of Ilgenfritz and that of Hughes which were ad- verse to the ruling of the court in the prior case. It must be borne in mind also that in the *Hughes case* the debt due the intestate by his deceased son had been re- duced to a judgment, so that there was no question as to the validity of the debt.

We now propose to show that the great weight of au- thority in the courts which have settled the question sup- port our position. *Wendall* v. *Mondell,* 67 Md. 444; *Pow- ell* v. *Morrison* from the supreme court of Texas, 28 L. R. A. (O. S.) 521 (88 Tex. 133); *Ilgenfritz Appeal,* 5· Watts, 25; *Oxsheer* v. *Nave,* 37 L. R. A. (O. S.) 98; the case of *Powers* v. *Morrison; McKenzie* v. *Bacon,* 4 So. 65; ———— *Morgan,* 23 La. 290; *Carson* v. *Carson, Executor,* 1 Met. (Ky.) 302, 303; *Stokes* v. *Stokes,* 62 S.. C. 346.

COOK, J., delivered the opinion of the court.

There is but one question raised by this record we deem it necessary to consider; that is, are the children

of a son, who died before his father died, entitled to share in the distribution of their grandfather's estate, unaffected by any debts due by their father to their grandfather? We think this question must be answered in the negative.

.Undoubtedly the grandchildren of the deceased take by representation, and, in effect, stand in the shoes of their deceased parent. In *Hughes' Appeal*, 57 Pa. 179, it is said: "We must take it now as settled beyond recall . . . that grandchildren, whose father died before their grandfather, the intestate, take, not paramount to their father, but through him by representation, such estate as only he would have taken, had he survived the intestate. In the distribution of the grandfather's estate, the grandchildren, therefore, take subject to the advancements.made to their father, and to such debts from him to the intestate as were recoverable when the estate descended."

In *Batton* v. *Allen*, 5 N. J. Eq. 99, 43 Am. Dec. 630, the court said: "A note given by a son to the father is not, of itself, evidence of an advancement by the father. It is evidence of indebtedness by the son. .The amount of the note may be recovered back from the son, either by the father, in his lifetime, or by his personal representatives, after his decease; but no part of an advancement can be recovered back. The very object of the father in taking the note should be presumed to be to avoid inequality, which would result if his personal estate, at his death, should be insufficient to give to each of his other children an equal sum. It is not a gift; the father does not divest himself of the property. . . . For the purpose of settling the distribution, the amount of this judgment debt should have been added to the said surplus—should form a part of the distributive share of the three grandchildren who represented the deceased father, James."

Speaking of the Kansas statute, substantially the same as ours, so far as the same may affect the question here

considered, the supreme court of Kansas, in *Fletcher* v. *Wormington*, 24 Kan. 259, said: "If the Legislature had intended what the defendant seems to claim that it did, it would in all probability not have added the words that it did after the words 'his share,' but would have added the words, 'absolutely and unconditionally,' or some other words of similar import." See, also, *Head* v. *Spier*, 66 Kan. 386, 71 Pac. 834.

We think the case of *Norfleet* v. *Callicott*, 90 Miss. 221, 43 South. 616, places this court in line with the decisions just referred to. It appears from the record in this case that the indebtedness of the deceased son is greater than the distributive share of his children, and, this being true, the grandchildren take nothing in this estate.

*Reversed and remanded.*

OPINION ON SUGGESTION OF ERROR.

COOK, J.

Careful consideration of the able and earnest brief of counsel in support of the suggestion of error fails to convince the court that there is error in the original opinion in this case. See 62 So. 229. That the courts are divided upon the question decided is true, but we think we have followed the authorities announcing the soundest doctrine. The statute of limitations was not mentioned in the former opinion, because we were of opinion that the statute had not run, and because we expressly decided that appellees would take no interest in their grandfather's estate.

*Suggestion of error is overruled.*