Johnson, J.
The dispute in the courts below was confined practically to questions of law. The testimony offered by each party on the trial related to phases of the controversy which were different from those to which the testimony of the other related. There is, therefore, no material conflict in the evidence.
In 1905 Mrs. Zinn, the testatrix, was an old lady of considerable wealth without lineal descendants. Her husband had died in 1880 and her only son in 1902. While visiting her niece, Mrs. Hoffman, in Massachusetts in August, 1905, she promised to give her $2,000 to assist her in the purchase of a house. Mrs. Hoffman was the daughter of Mrs. Virginia Ellard, who was Mrs. Zinn’s sister. Mrs. Zinn at other times referred to and repeated her promise to give her niece the amount named for the purpose stated. In April, 1907, she wrote her niece inquiring about the house-hunting and stated in the letter “I will keep my word when you decide what you want.” In the following month Mrs. Hoffman notified her aunt that she had arranged to buy a house. Thereupon Mrs. Zinn went to the office of Mr. A. A. Ferris, who had been for many years *344 her attorney and counsel, having charge of her large estate and making monthly reports to her. Mr. Ferris testified that she said she wanted to help Mrs. Hoffman through Mrs. Ellard to buy a house, and wanted to get $2,000 for that purpose. After stating that it could be borrowed, Mr. Ferris suggested that there should be some evidence of it, and Mrs. Zinn said, “Put it in a note.” Mr. Ferris afterward prepared a note, enclosed it with a draft for the amount, and forwarded it to Mrs. Zinn at her residence, with the suggestion that Mrs. Ellard should sign the note. Within a day or so Mrs. Zinn endorsed and gave the draft to Mrs. Ellard at her house and said, “I have fulfilled my promise, here is the two thousand dollars for Mamie,” and then said that Mr. Ferris had suggested that Mrs. Ellard should sign the note. This Mrs. Ellard refused to do and it was not signed. She left Mrs. Zinn’s house with the draft, stating to Mrs. Zinn, “I will mail this to Mamie on the first mail,” to which Mrs. Zinn made no objection. The draft was mailed the next day. Mrs. Zinn called on Mr. Ferris, told him what had occurred and that she had finally delivered the draft. Mr. Ferris again remarked that there should be some acknowledgement from Mrs. Ellard for the $2,000. After some further talk Mrs. Zinn, at Mr. Ferris’ suggestion, directed him to stop payment of the draft, which he did. He then wrote a letter to Mrs. Ellard in which he assured her that there was no intention to sue on the note when due and stated that he had stopped payment of the draft and enclosed a blank *345 receipt, saying, “You can, if you please, fill it out yourself, giving the form of it, it being only necessary that you should express in some words that you.have received the $2,000.00.” Mrs. Ellard then herself wrote the receipt, a copy of which is above set out in the statement of the case, and it was sent to Mr. Ferris. As to this Mr. Ferris testified: “The next morning I called up Mrs. Zinn, and I don’t think I read the receipt over to her, but I told her the receipt was in my possession and that it covered the ground.” So far as shown, Mrs. Zinn never saw the receipt and never knew its terms. Subsequently Mrs. Zinn expressed her satisfaction that she had assisted her niece in the purchase of the house, and on September 21, several months after-wards, she wrote to her brother a letter in which she stated “I gave Mamie $2000, two thousand dollars, towards the payment of her house lately.”
The will of Mrs. Zinn was made in August, 1906, the draft for the $2,000 was delivered May 21, 1907, and she died in February, 1908.
In support of the judgment of the court of appeals it is contended that the real issue is whether parol evidence can be admitted to vary the terms of what defendant in error claims is a written contract ; that is to say, the paper signed by Mrs. Ellard after the time the draft for $2,000 was delivered to her.
It is insisted that the cases of Jackson v. Ely, Exr., 57 Ohio St., 450, and Cassilly v. Cassilly, 57 Ohio St., 582, rule the question as to the admissibility of the testimony referred to.
*346 In Jackson v. Ely, Exr., Mrs. Jackson signed the following paper:
“$15.50 Wooster, Ohio, May 13, 1890.
“This is to certify that I have this day settled with John Ely, and he has paid me all he owed me, up to this date, and I have no claims or demands against him of any kind whatsoever.”
The court held that this instrument was not merely a receipt but an agreement that the parties had come to a settlement. There had been mutual obligations between them and the court points out that a “settlement” is a contract between two parties by means of which they ascertain the state of the accounts between them. Full consideration had passed from each side.
In Cassilly v. Cassilly, Mrs. Cassilly signed a paper in which she contracted to transfer to her son all interest that she had in the estate of her deceased brother. The court held that the paper embodied a contract which could not be contradicted by parol evidence. In both of the cases referred to there were valuable considerations moving from and to each of the parties. They had reduced their contracts with reference to the matters to writing, and when the court concluded that the instruments were not merely receipts but embodied contracts it followed that parol evidence was not admissible to vary their terms.
As to the paper involved in this case the parties did not sustain towards each other any contractual *347 relationship whatever. Before the paper was signed Mrs. Zinn was not obligated to give Mrs. Ellard any interest in her estate whatever, and after the paper was signed Mrs. Zinn could have refused to give Mrs. Ellard any portion of her estate or could have given her all of her estate. On the other hand, Mrs. Ellard did not assign or release anything that she had. Nemo est haeres viventis. There is not present any of the grounds upon which the rule which excludes parol evidence with reference to written instruments is based. The evidence offered was admissible to explain the circumstances under which the paper referred to was made and delivered, as well as to show the intention of the testatrix in making the gift.
Although the paper signed by Mrs. Ellard is not a legal contract, release or assignment, still it might well be held to work an estoppel against her if the circumstances under which the money was paid, and the paper signed and delivered, were such as to furnish the basis for the application of that doctrine. This was the holding in Rosenthal v. Mayhugh, 33 Ohio St., 155, cited by the defendant in error and referred to later in this opinion. But in that case there was a'complete finding of facts from which, as shown later on herein, the court found all the elements of estoppel. Evidence was received showing all of the circumstances connected with the transaction. But it is averred in the answer of Ferris, trustee, that the $2,000 was advanced to Mrs. Ellard and received by her with the intention and for the purpose of satisfying and adeeming the *348 bequest to Mrs. Ellard in the will of Mrs. Zinn to the extent of the sum so advanced. .
An advancement is a gift in praesenti of money or property to a child by a parent to enable the donee to anticipate his inheritance pro tanto, and applies to cases of intestacy. Ademption is the extinction or withholding of a legacy in consequence of some act of the testator. A gift will be taken as an ademption only when made to a child or one to whom the testator stands in loco parentis. The rule seems to be universal, as shown by the cases cited in the briefs, that the matter of an ademption depends wholly on the intention of the testator; that where a legacy is given by the testator to a child, or to one to whom he stands in loco parentis, a subsequent payment made to the child raises the presumption of an intention on the part of the testator to adeem the legacy in whole or in part, but that in case of a legacy to a person other than the child of the testator, or to one to whom he does not stand in loco parentis, a subsequent gift to the legatee raises no presumption of an intention of the testator to satisfy the legacy unless the gift is for the same specific purpose for which the legacy was designed, or is in terms made a substitute therefor, but it must be made to appear clearly, either from the will or by extrinsic evidence, that such satisfaction was intended. 40 Cyc., 1916.
The doctrine of ademption is applied on the same principle as that of advancements in cases of intestacy, and is founded on the presumption that a parent intends that all of the natural objects of his *349 bounty shall share equally in his estate, and that where he makes a gift to a child or to one to whom he stands in loco parentis of property ór money which he has devised or bequeathed to such child or person he intends to adeem, “to take away” the legacy in whole or in proportion to the value of the gift. The relationship creates the presumed intention, but it does not arise in the case of one not sustaining that relationship, although the actual intention may always be shown by evidence.
In this case the question whether the gift was an ademption depends solely on the intention of Mrs. Zinn, the testatrix. That is the important- — the decisive — question in the case. It is wholly immaterial what the intention of the legatee was in the receiving of the gift to be delivered to her daughter, unless the circumstances surrounding the making of the gift would tend to establish that the testatrix shared the intention of the legatee. As shown, the rule is that it must be made to appear that the testatrix herself intended that the gift of the $2,000 was an ademption of the legacy contained in the will for Mrs. Ellard.
As already indicated, there is no dispute in the testimony as to any material fact. The dispute relates to the conclusion to be drawn from undisputed evidence.
The evidence, oral and written, that Mrs. Zinn intended to give the $2,000 to Mrs. Hoffman, the niece, as an unqualified gift, and that she after-wards and always regarded it in that light, is clear and undisputed. It is also clear that while she *350 acquiesced fully in the suggestion of her attorney, which was entirely proper and creditable to him, that she request some sort of written acknowledgment from Mrs. Ellard when the draft was delivered to her for transmission to her daughter, she did not see the receipt tha.t was signed by Mrs. Ellard, did not know its terms, took no interest in it after it was signed and never did anything or said anything that would indicate that she intended that the $2,000 which she declared she had given her niece should be charged against the legacy which she had made to her sister by her will.
Inasmuch as the legatee was not a child and was not one to whom she stood in loco parentis, and inasmuch as the rule is clear that in such circumstances it must be made to clearly appear that the testatrix intended that the gift of $2,000 should operate as such ademption, we are constrained to hold that it cannot be so treated.
' Cases are cited in support of the judgment below in which receipts signed by children were delivered to a testator in his lifetime which purported to be releases in full or in part of the child’s interest in the estate and in which it was held that the amounts received should be charged against the interest of the legatee. These authorities are not in conflict with the principles which we regard as controlling the case we have in hand.
In Glasscock v. Layle et al., 21 Ky. Law Rep., 860, 53 S. W. Rep., 270, cited by defendants in error, money was paid to a son by his mother’s agent. *351 The son executed and delivered to the agent the following receipt:
“Williamstown, July 27, 1889.
“Received of N. Webster four hundred dollars as my interest in my mother’s estate.
“N. B. Layle.”
It was contended that the $400 was an ademption of the devise to Layle in the will of his mother. Evidence was admitted showing the circumstances under which the money was paid, and the court say: “The testimony of Webster is to the effect that he made the payment at the request of the mother, and it was in full satisfaction of his (Layle’s) interest in her estate. It also appears that Webster at that time had charge of and control of the funds .of the testatrix, and was attending to her business. This testimony of Webster is not contradicted by any witness. * * * The only question presented for decision is whether the $400 was an ademption of the devise to N. B. Layle in the will of his mother. It seems to us that the evidence sustains the contention of appellees as to this question.” See also Low v. Low, 77 Me., 37; Norfleet et al., Exrs., v. Collicott et al, 90 Miss., 221, 43 So. Rep., 616; Vreeland v. Vreeland et ah, 65 N. J. Eq., 668, 56 Atl. Rep., 1089.
In those cases the taking of the receipt, or the contract, by the testator, whether it merely acknowledged the gift or purported to state a con *352 tract dependent upon.it, was clear evidence of the intention of the testator himself that the amount stated in the paper to have been received should be deducted from the legacy. The very fact that the testator demanded and accepted such a paper would be conclusive evidence of such intention on his part.
It is remarked in Needles, Exr., v. Needles et al., 7 Ohio St., 432, that where two children contract with each other in regard to their expectancy from their ancestor, they stand upon equal footing, and although such contract cannot operate by way of assignment or release, yet where a valuable consideration has been paid it may operate by way of estoppel or be enforced in equity.
The above remark by the court in the Needles case is referred to in Rosenthal v. Mayhugh, 33 Ohio St., 155, 168, which is cited by defendants in error here. In that case a husband had left his family and place of residence and went to parts unknown and was not heard of for a period of more than seven years. He left his family without other means of support than the house and lot where he resided. His wife joined with the children, in order to induce a sale of the real estate for their mutual benefit, - in representing- that he was dead, and thereby effected the sale of the real estate and joined them in a conveyance in fee with covenants of general warranty. It was held that although the husband was still living, and although such conveyance did not operate as a release of her inchoate dower, yet by reason of the facts found by the court she was barred by way of equitable es *353 toppel from treating her contract as a nullity and from asserting her right to have dower assigned upon the actual death of her husband. That case presented all the elements required for the application of the doctrine of equitable estoppel. The consideration money was paid by the purchaser relying on the representations of the widow and children.
In this case, as we have seen, Mrs. Zinn did not give the $2,000 to Mrs. Hoffman on account of any representations that were made by Mrs. Ellard, or because of anything that was stated by her in the receipt. The case lacks the essential elements which must be present before the application of the doctrine of estoppel can be insisted upon.
The judgment of the court of appeals will be reversed and the cause remanded with instructions to render judgment in favor of the plaintiff in error as prayed.

Judgment reversed.

Nichols, C. J., Donahue, Wanamaker and Matthias, JJ., concur.