## Rufus Burnett et al v. Amanda C. Smith.

### [47 South. 117.]

1. Witnesses. *Competency. Estate of decedent. Evidence. Code 1906, § 1917.*

   Where a father executed a deed conveying land to his daughter, and, after his death, his heirs other than the grantee sued to cancel it because of the father's mental incapacity and the daughter's undue influence over him, the grantee is an incompetent witness in her own behalf, under Code 1906, § 1917, providing that a person shall not testify as a witness to establish his own claim or defense against the estate of a decedent.

2. Deeds. *Capacity of grantor. Presumption. Evidence.*

   The capacity of a grantor to execute a deed is presumed in the absence of evidence to the contrary.

3. Same. *Undue influence.*

   Undue influence is not sufficient to set aside a deed, unless it takes away the free agency of the grantor; every influence is not undue, and undue influence cannot be predicated of any act, unless free agency is destroyed. Influence exerted by means of advice, arguments, persuasions, solicitation, suggestion, or entreaty is not undue, unless it is so importunate and persistent, or otherwise so operates as to subdue and subordinate the will and take away free agency.

4. Same. *Motive of grantor. Materiality.*

   One of sound mind may execute a deed from any motive, whether it be love, gratitude, partiality, prejudice, whim, or caprice.

5. Same. *Presumptions.*

   The fact that a father conveyed land to his youngest child, who had always remained with him, to the exclusion of his other children, who were of middle age and settled in life, did not create a presumption of undue influence or a lack of free agency.

From the chancery court of, second district, Hinds county.

Hon. Robert B. Mayes, Chancellor.

Burnett and others, appellants, were complainants in the court below; Mrs. Smith, appellee, was defendant there.

From a decree in defendant's favor the complainants appealed to the supreme court. The facts are sufficiently apparent from the opinion of the court.

*Wells & Wells,* for appellants.

The preponderance of the evidence in this case shows that D. J. Hartzog was insane at the time he made the deed.

The evidence in this case shows that the grantee had great influence over her father, and exercised that influence over him to induce him to make the deed, when otherwise he would not have made it.

The relationship shown to have existed between the father and the daughter was such that when a voluntary conveyance was made to her by him, it devolved on her to show, beyond all question, that she did not use undue influence with him; the testimony in this case shows, *prima facie* at least, that she did exercise that influence over him, and she has failed to prove by any testimony that she did not exercise such influence.

The burden of proof was put upon Mrs. Smith to show that she did not use undue influence, and we will now cite the court to the authorities which sustain us in this position. We cannot in this connection better state the law upon this subject than Daniel has done in his work on Chancery practice, Vol 1, page 852, (4th ed.), and quoting now from the author:—

"It may also be stated generally that whenever a person obtains any voluntary donation, or benefit from another, the *onus probandi* is upon the former, if the transaction be questioned, to prove that the transaction was righteous, and that the donor voluntarily and deliberately did the act, knowing its nature and effect. Moreover where the relation of the parties is such that undue influence might have been used, the *onus probandi,* to show that such influence was not exerted, is upon the person receiving the benefit."

On this point we think we are amply sustained by this court in the following cases to which we invite special attention.

The case of *Norfleet v. Beall,* 82 Miss. 538 (34 South. 328), the syllabus uses this language. "A deed from an invalid, credulous and weak minded old woman, prepared by the attorneys of the grantee, purporting to convey her entire estate, with reservation of a life estate in the grantor, to her family physician and confidential friend, in consideration of care and medical attention and fifty dollars, is void, in the absence of evidence showing that the transaction was free from fraud and undue influence."

In its opinion the court says, such a transaction between parties sustaining such relations cannot be sustained in a court of equity, unless the proof leaves the transaction free from fraud *and undue influence.*

After the confidential relationship between the father and daughter has been established, it is devolved on her to show that she did not use her influence to obtain the deed. See also *Sheenan v. Kearney,* 82 Miss. 702, 21 South. 41.

The case of *Plant v. Plant,* 76 Miss. 560, 25 South. 151, in its facts and the legal questions involved in it, is strikingly like the case at bar, and sustains our contention. In that case there was no evidence of the exercising of any undue influence by the father, by procuring the assignment from the son, but the court held that the law would infer undue influence from the relationship which existed between the parties, and held that as there was no positive proof that he did not exercise undue influence, the conveyance must be set aside. The syllabus in that case reads as follows:

"A father's undue influence over his invalid son may be established by circumstantial, as well as by direct, evidence."

Transactions of this kind between parent and child are always to be viewed with suspicion, and the court should always scrutinize a case where an old, infirm, weak and sick father conveys all his property to the child who is living with him and caring for him, and the other children receive nothing, es-

pecially when it is not shown that he had any unkind feeling toward his other children. The case is strikingly like the proponent of a will, in as much, as the grantee never took possession of the property, or had the slightest control over it, until after the father's death.

It is held in *King v. Rowan,* 82 Miss. 1, 34 South. 325, and *Sheehan v. Kearney,* 82 Miss. 702, 21 South. 41, that the burden of proof is always on the proponent of a will, and, in this instance where the deed never took effect, so far as the possession and use of the property was concerned, until after the death of the father, the grantee ought to be held to as strict proof of the fairness of the transaction with her father, and be required to prove positively and clearly that she did not use any influence over him to induce him to make the deed. Not only is the principle of law that the burden of proof is on her to show that she did not use undue influence well established in this state in the cases to which we have referred, but it is universally true with other states.

The case of *Haydock v. Haydock,* 34 N. J. Eq. 57, uses this language in a similar case to the one at bar.

"When a person enfeebled in mind by disease or old age, is so placed as to be likely to be subject to the influence of another, and makes a voluntary disposition of property in favor of that person, the courts require *proof of the fact* that the donor understood the nature of the act, and that it *was not done through the influence of the donee.*" This case is cited and approved in *Hill v. Miller,* 50 Kansas, 665.

In *Paddock v. Pulsifer,* 43 Kan. 718, following *Highberger v. Steffler,* 21 Md. 338, the court says—

"In such a case it is not necessary to prove the exercise of overweening influence, misrepresentation, importunity or fraud *aliunde,* the act complained of."

The case of *Hemphill v. Halford,* 88 Mich. 296, was where a father conveyed all his property to one child in his old age and

left the others without anything. The court set aside the conveyance in a suit by the other children after the death of the father.

*Williamson, Wells & Peylon,* for appellee.

This case presents a mere question of fact which has been decided by the chancellor adversely to the contention of the appellants and this court will not disturb the finding of the court below if it be sustained by proof, although there may be evidence to the contrary. This court will treat the finding of the chancellor as it does the verdict of a jury, and unless manifestly wrong and contrary to all of the evidence in the case the decree of the court below will be affirmed.

"Where conveyances are assailed as fraudulent, and the controversy is largely one of fact, though there is much evidence to excite suspicion as to some of the transactions, if the alleged fraud is not satisfactorily established, and the court on the whole case, is unable to say that the finding of the chancellor is erroneous, the same will not be disturbed." *Allen v. Smith,* 72 Miss. 689, 18 South. 579; *Jones v. Bank,* 71 Miss. 1023, 16 South. 344.

"The presumption in favor of a decree includes conclusions both of law and fact. It will not be disturbed unless shown to be clearly wrong, being analagous in this respect to the verdict of a jury." *Partee v. Bedford,* 51 Miss. 84.

Counsel for appellants are not sustained by the authorities cited by them upon the proposition that the burden of proof is on Mrs. Smith in this case to sustain the deed, but on the contrary the law is that the burden of proof is on the complainants to show that the deed was fraudulent, or that it was obtained by undue and improper influence and was not in accordance with the intent of the grantor, and that it was made at the time when Hartzog, the grantor, was of unsound mind and incapable of making a contract. 27 Am. & Eng. Ency. of law, (2d ed.) 456.

CALHOON, J., delivered the opinion of the court.

We think, on the evidence in this case it impossible to reverse the holding of the court below that Hartzog was mentally capable when he made the deed. If he was of sound mind, he certainly made, acknowledged, and had this deed recorded, with every indication of consideration in his action—a deliberate purpose to give his property to his youngest child, a daughter, who had never left him. On the question as to his being induced to execute the deed by undue influence, we think there is no evidence to be found warranting the court in so holding. His daughter, Mrs. Smith, was incompetent as a witness, because her testimony would be in support of her claim to the property of the deceased under that deed. Her husband testified that he or she never knew that the deed was made, or intended to be made, until it was delivered to Mrs. Smith (Hartzog's daughter) after it had been executed, acknowledged, and recorded. The procedure of Hartzog seems to have been with the utmost deliberation. He sent for the gentleman to prepare the deed, who did prepare it, and Hartzog signed the deed; his daughter, Mrs. Smith, who was his youngest child, not being present. Hartzog himself went before the officer and acknowledged it, took it to a store where he traded, and caused it to be sent to the office of the chancery clerk to be recorded. After it was recorded he had it returned to him and delivered it to Mrs. Smith.

There could have been no undue influence, unless it was such as to take away the free agency of Hartzog, and the chancery court found that such was not the case. It must be kept in mind that capacity to make the deed is implied until overthrown by evidence, and we see by reference to 29 Am. & Eng. Ency. of Law (2d ed.) 105, that not every influence is undue, and undue influence cannot be predicated of any act unless free agency is destroyed, and that influence exerted "by means of advice, arguments, persuasions, solicitation, suggestion, or entreaty is not undue, unless it be so importunate and persistent,

·or otherwise so operate, as to subdue and subordinate the will and take away its free agency. Nor is influence ordinarily con- .sidered undue which arises out of sympathy, kindness, attention, attachment or affection, gratitude for past services, desire of .gratifying the wishes of another or of relieving distress, claims of kindred and family or other intimate personal relations, love, ·esteem, social relations, prejudices, or flattery."

We look in vain in this record for any satisfactory evidence ·of the exercise of undue influence. We refer, also, to 8 Words and Phrases, commencing on page 7166, for definitions of and authorities on "undue influence;" and we find nothing in this record of sufficient moment to authorize a reversal of the chancellor's conclusions on the facts of this case. A man of sound mind may execute a will or a deed from any sort of motive satisfactory to him, whether that motive be love, affection, gratitude, partiality, prejudice, or even a whim or caprice. Under the circumstances of this case, it occurs to us as quite natural that Hartzog·should prefer his youngest child, a daughter, who had always been with him, and the mere fact that there was no recognition in the deed of his other children, who were of middle age and settled in life, could not be held to be a presumption of undue influence or a lack of free agency. No expert testimony as to sanity was offered. All the witnesses knew the man. *Wood v. State,* 58 Miss. 741; *Sheehan v. Kearney,* 82 Miss. ·688, 21 South. 41, 35 L. R. A. 102.

*Affirmed.*