GHOLSON *et al. v.* PETERS *et al.*

(Division B.   Nov. 1, 1937.   Suggestion of Error Overruled Dec. 13, 1937.)

[176 So. 605.   No. 32830.]

Lester **G. Fant, Sr.** and **Jr.,** of Holly Springs, for appellants.

Hindman Doxey, of Holly Springs, for appellants.

**Hindman Doxey** and **Lester G. Fant, Jr.,** both of Holly Springs, for appellants.

**L. A. Smith, Sr.,** of Holly Springs, for appellees.

Argued orally by **Lester G. Fant, Jr.**, and **Hindman Doxey**, for appellant.

**Griffith, J.**, delivered the opinion of the court.

Appellees are the two daughters, and the only surviving children, of Mrs. Mamie Peel Crawford, who died testate on May 29, 1935, the testatrix being then about sixty-five years of age. One of the daughters, named

Sidney, had married some years before and resided in Texas. The other daughter, Marion, had also married and for a few years lived in Memphis, but her marriage was a failure and she was divorced, after which she returned to the home of her parents where she continued to reside until some time after her mother's death.

During the time that the daughter Marion was living in Memphis a child was born to her, and in a while this child was brought to the home of her grandmother, where she thereafter resided until the death of the latter, a period of some four or more years. The grandmother became devotedly attached to the child; all the love which she had formerly shown or could have shown towards her own daughters she bestowed upon this little girl, her granddaughter. Every witness testified in affirmance of this dominant fact; and all agreed that the grandmother, on every occasion and under all circumstances, avowed her intention to leave all her property by will to this granchild.

In pursuance of that intention, from which there had never been any deviation, the grandmother, Mrs. Mamie Peel Crawford, on December 18, 1933, made and executed her last will by which she devised and bequeathed to the said granddaughter, Mary Ann Peters, almost the whole of her property, with appropriate provisions for the care and preservation of the estate through executors to be followed by trustees, and for the entire protection of the child throughout the years when she would most need such protection. The aggregate value of the estate so devised and bequeathed was between twenty-five and thirty thousand dollars. Within the time allowed by law, Marion, the mother of the child, together with the sister Sidney, the two daughters of the testatrix, filed a contest of the will on the ground of mental incapacity, and particularly upon averments that the testatrix was, at the time of the execution of the will, so obsessed with an unnatural and unfounded hatred of her said two daughters as to render her of unsound mind so far as

her relationship to them was in anywise concerned. Dr. Crawford, the husband of the testatrix, and the father of the contestants, did not join in the contest and was made a defendant. The issue of testamentary capacity was submitted to a jury, a verdict for contestants was returned, and hence this appeal.

The contestants did not attack the general mental capacity of the testatrix, and the evidence of all the witnesses who touched upon that subject is in substantial agreement that the testatrix was deemed of sound mind as regards the general affairs of life as well as in the ordinary management of her business and business concerns. It sufficiently appears, however, that the testatrix was of a moody and suspicious temperament, and that on many occasions, when in a temperamental period, she would resort to language of intense bitterness and sometimes of hatred towards her daughters, and would complain of her neighbors and friends upon charges which had no sufficient foundation in fact; but that, when these periods had subsided, her attitude was one which approached sufficiently near enough to that of a normal and well-disposed person. Throughout it all, however, and whatever her temper happened at any time to be, there always shone out, with an ever-increasing brilliancy, the light of her profound and devoted love and adoration of this grandchild, Mary Ann Peters; and also throughout there prevailed in her an affectionate interest in small children, and particularly for those who were the neighbors and playmates of Mary Ann.

We do not attempt to detail the evidence, deeming the summaries herein stated to be sufficient. We may say, however, that in material respects the evidence is somewhat similar to that outlined in the lengthy opinions in Mullins v. Cottrell, 41 Miss. 291, and Moore v. Parks, 122 Miss. 301, 84 So. 230, in both of which cases this court held the evidence was insufficient to sustain a verdict for contestants on the issue of mental capacity; and we add that, in our opinion, the evidence in the pres-

ent case is not so strong in favor of affirmance as was the record in the two cases cited.

The monomaniac, or one suffering with an insane delusion, being sane in other respects, and knowing that, if he display his delusion or monomania, he may be in danger of being declared insane, will sometimes, as the books on medical jurisprudence tell us, take cautious pains to conceal his affliction from all other persons; but generally, and therefore with the greater probability, as pointed out in the Mullins Case, a person under the abiding influence of an insane delusion on a particular subject or who may properly be termed a monomaniac on that subject will show excitement and will exhibit the symptoms of the delusion or mania whenever the subject is mentioned. But here, as in the Mullins Case, while two or three of the witnesses for the contestants testified that the testatrix would, in her conversations with them, continuously and freely revert to her dislike or hatred of her daughters, several other witnesses testified without contradiction that in her conversations with them, and on numerous occasions, when the subject of her family and of her daughters in particular was mentioned, the conversation by testatrix on that topic would proceed normally and without any exhibition whatever of the alleged delusion or monomania.

It becomes, in consequence, of importance to state that when the testatrix discussed with her banker her intention to make a will with the grandchild the chief beneficiary, and outlined in general the terms which she desired incorporated in the instrument, and which were afterwards incorporated therein by her attorney, her attitude was one of calm reflection and of intelligent perception and apprehension as to the natural objects or persons of her bounty and their relations to her. The reasons given by her for the terms of the will were such as would appeal to the mind of a prudent and cautious person, however much some other particular person or persons might disagree with her. And when later, af-

ter the will had been prepared and was read to her by one of the subscribing witnesses, she expressed her entire satisfaction with it, and signed it in an attitude of normal demeanor, so far as any of those present could discern; in which connection it may be interesting to note that the daughter Marion was with her on this occasion, although she did not see the actual signing of the will by the testatrix or by the attesting witnesses. Certain it is then that, since a person afflicted with general insanity may direct and make a valid will when in a lucid period, the testatrix here, accepting all that the witnesses for contestants say of her monomania, could do likewise in a lucid interval.

It is laid down in the authorities that an unfounded prejudice, or antipathy, or even hatred towards a near relative is not itself enough to destroy testamentary capacity. A testator may entertain his animosities, cherish his prejudices, and nurse his wrath against those who would be the heirs at law of his estate, and may be guided by those feelings in the disposition of his property and still have testamentary capacity, unless the sentiments harbored by him amount to an insane delusion or to monomania on the subject. See notes to Dibble v. Currier, Ann. Cas. 1916C, 1. See, also, Burnett v. Smith, 93 Miss. 566, 47 So. 117. The affliction must be such as to be the dominating factor in the testamentary act and at the time thereof, whereas here, not the hatred or dislike of the daughters was the dominant agency, but the great love which she bore to her little granddaughter, the object—and a natural one—around which her whole life had become centered.

Reversed and decree here for appellants.