WARD *v.* WARD *et al.*

(In Banc.   Jan. 12, 1948.   Suggestion of Error Overruled Feb. 23, 1948.)

[33 So. (2d) 294.   No. 36609.]

Welch, Cooper & Welch, of Laurel, and L. K. Saul, of Ellisville, for appellant.

Gillespie, Minniece & Nettles, of Meridian, and **Paul G. Swartzfager**, of Laurel, for appellees.

Argued orally by **W. S. Welch**, for appellant, and by **Thomas Y. Minniece**, for appellees.

**Alexander, J.**, delivered the opinion of the court.

This action is a contest of the will of E. J. Ward, Sr., on the grounds (1) of undue influence, and (2) of a lack of testamentary capacity. An issue devisavit vel non was made up and submitted to a jury which rendered its verdict for the contestants, appellees here.

At the threshold of the case, the proponents interposed a written agreement of settlement between E. J. Ward, Sr., and his children who are the contestants. The wife of E. J. Ward, Sr., had died in October 1936. Mr. Ward was at that time approximately seventy-three years of age. It was not long thereafter that he disclosed to the children a growing attachment to appellant. To the considerate protests of his children, he pleaded an overpowering sense of loneliness. The objection of the members of his family, based on grounds which were at least logical and plausible, became a disquieting factor in an emotional state given impetus by the death of his wife. Without detailing here the illustrations of this expanding dilemma, we set forth the relevant portion of a written agreement executed by the children in June 1937.

After making transfer of certain stocks to all of his children estimated to be approximately of the value of

$7,000 to each, the agreement above referred to concluded in the following language: "This gift is of my own free will and accord, my children in accepting this agree not to interfere in any way with my plans as to my future. Nor to have any claim on any other stocks, real-estate or personal property that I may have or acquire." It was signed by each transferee beneath the written language: "We the undersigned accept the above and agree to abide by our father's wishes as to his future plans." It was dated June 8, 1937, and acknowledged eleven days later.

As illustrative of the motive for this distribution, the agreement had been preceded by a letter to his fiancee, appellant here, dated June 7, 1937, which is as follows:

"Mrs. Rosalie Collins

"Ocean Springs, Miss.

"Dear Mrs. Collins:

"This is to advise that father has proposed a satisfactory settlement which is acceptable to us and that we have no further objection to his marriage. We hold no ill feeling against you and feel that if you consent to marriage it will make father happy, which is our desire, above all else.

"Mrs. R. D. Peterson
"Robert Ben Ward
"Mrs. Laurie W. Rischer
"John M. Ward"

A majority of the Court are unable to agree that the effect of such settlement is to bar subsequent claims against the estate of Mr. Ward. The finding of the chancellor that the agreement is lacking in certainty as to the purpose and extent of the waiver, and is not therefore controlled by Norfleet v. Callicott, 90 Miss. 221, 43 So. 616, is therefore not disturbed.

The proponents requested a peremptory instruction upon the issue of undue influence. We have carefully weighed the meager testimony to establish this issue in the light of the terms of the will itself; of the pre-

cedent settlement; of the circumstance that the purpose of the testator was to assure himself of a successful marriage by bringing to it a substantial estate, without which he feared its consummation could not be effected; of the important circumstance that the bulk of his estate was left to his wife to whom he was primarily and solemnly obligated above ''all others''; of the testimony upon the issue of mental capacity; and of the requirement that such influence must arise from without and be such as virtually to destroy his free agency. Our conclusion is that the peremptory instruction for the proponents upon this issue ought to have been given. Compare O'Bannon v. Henrich, 191 Miss. 815, 4 So. (2d) 208, and Burnett v. Smith, 93 Miss. 566, 47 So. 117.

Since the verdict of the jury was a general one and invested with uncertainty as to whether it is referable to either or both issues, there is raised a serious question whether, in view of what has been said, the cause should at all events be remanded. In view of what follows, we do not decide this question.

The issue of a lack of testamentary capacity was made up out of numerous instances set against a background of emotional instability. For some time, the testator had floundered in the seas of desolation after the tides of tragedy had cast him adrift. He was at the time the will was executed approximately seventy-seven years old. In addition to those eccentricities common to those of advancing age, there were shown many instances of conduct which with obsessive force pressed against the flexible bounds of the definition of eccentricity. When assembled apart from other conduct and dissociated from those periods of calm and discretion which all witnesses for the contestants conceded, they could constitute an impressive challenge. However, this testimony fails to establish the fact that at the crucial moment when evidence of testamentary capacity attains its maximum and controlling relevancy, that is, at the time of the will's execution, there was any lack of capacity to appreciate

the nature and effect of his act and the natural objects of his bounty. Lum v. Lasch, 93 Miss. 81, 46 So. 559. On the contrary, the only available attesting witness testified to the testator's complete sanity at the time of his careful examination, before signing, of the will as to whose contents and import he made intelligent and solicitous inquiry. Compare Gholson v. Peters, 180 Miss. 256, 176 So. 605. Assuming that there were detached incidents of conduct suggesting aberration, the establishment of intervals of unquestioned lucidity, during one of which the will was executed, so far outweighs the inferences from isolated instances of eccentric deviations as to depreciate such instances below a substantial probative value. In this connection, it is appropriate to note that none of the host of witnesses for the proponents, many of whom had known the testator long and intimately, and none of whom, with possibly one exception, had a personal or financial interest in the issue, were or had ever been aware of any abnormal conduct or emotional upset.

We have not been at pains to delineate these illustrative incidents since neither this case nor those from which controlling principles have evolved are ever duplicated in their factual patterns.

Our conclusion is that the peremptory instruction requested by the proponents on the issue of testamentary capacity ought to have been given.

Reversed and decree here for appellant.