FOUNTAIN, et al. *v.* REID.

May 12, 1952.

No. 38358 (58 So. (2d) 666)

**Bonnie Smith**, and **Dent & Dent**, for appellants.

**W. U. Corley**, for appellee.

**Holmes, J.**

This is a suit to determine which of two instruments of writing, one dated November 4, 1949, and the other dated

January 11, 1945, and each purporting to be the last will and testament of F. B. (Frank) Bryant, deceased, constitutes the true last will and testament of the said deceased. The said F. B. Bryant died March 9, 1950. On March 14, 1950, the appellee, Moselle Reid, who was named as the sole beneficiary and as executrix in the purported will of November 4, 1949, filed her petition in the Chancery Court of Covington County, presenting for probate said purported will of November 4, 1949, and praying that the same be admitted to probate in common form and that she be appointed as executrix of the estate of the deceased. An order of the chancery clerk was entered in vacation granting the prayer of said petition and appellee thereafter qualified as the executrix of the estate of the said deceased. On March 31, 1950, the appellants, Kizzie Fountain and Hoyt Roberts, who were named as the beneficiaries in the purported will of January 11, 1945, filed a caveat against the probate of the said purported will of November 4, 1949, contesting the same upon the grounds of undue influence and mental incapacity on the part of the testator and praying that the said purported will of January 11, 1945, be admitted to probate as the true last will and testament of the said deceased. An order of the chancery clerk was entered on said petition referring the same to the chancellor for determination as to which of the purported wills was the true last will and testament of the deceased. On May 1, 1950, certain of the heirs of the said deceased filed a caveat against the probate of both of said purported wills and prayed and obtained service of process upon the remaining legal heirs of the deceased. The petition of the said heirs attacked both of said purported wills upon the grounds that the same were the result of undue influence and that the testator was mentally incapacitated at the time of the execution of each of the said purported wills. Answers were filed and in due course an issue devisavit vel non was made up between the parties and the cause was tried by the chancellor, a jury having

been waived by the agreement of the parties. After hearing the evidence, the chancellor found that at the time of the execution of the purported will of November 4, 1949, the testator was of sound and disposing mind and memory, and executed said instrument voluntarily and free from the exercise of any undue influence, and entered his decree adjudging the said instrument of November 4, 1949, to be the true last will and testament of the said F. B. Bryant, deceased. From this decree, the appellants, Kizzie Fountain and Hoyt Roberts, prosecute this appeal.

It is contended first on this appeal that the decree of the chancellor is contrary to the overwhelming weight of the evidence. The evidence was voluminous and we shall not undertake to relate in deail the testimony of the numerous witnesses, but shall confine ourselves to a statement of the substance of the evidence. The testimony, with the exception of the testimony of the appellant Kizzie Fountain, showed that the testator was from 80 to 85 years of age at the time of his death. Kizzie Fountain testified that he was about 92 years of age at that time. The record discloses that the testator was an educated man and had been a school teacher and had been one of the outstanding colored citizens of his community. He was described by some of the witnesses as being conservative and stingy. He was generally regarded during his active years as possessing splendid intelligence. One of his eyes had been removed a number of years prior to his death and during the two or three years preceding his death, the sight of his other eye was impaired. His wife, Peggy Bryant, who was the sister of the appellant Kizzie Fountain, died in December, 1945. Following her death, the appellee, Moselle Reid, who was a niece of the testator and who had previously been living in Chicago, returned to Mississippi and resided in the home of the testator. The testator owned his own automobile and drove it himself until shortly before his death. For some two years or more preceding his death, because of his

defective eyesight and his increasing age, as shown by the testimony of witnesses introduced on behalf of the appellee, he procured the services of others to drive him about. All of the witnesses introduced on behalf of the appellee, including the attorney who drafted the purported will of November 4, 1949, testified that at the time of the execution of this instrument the testator was of sound and disposing mind and memory and was fully capable of transacting his business and of determining the disposition of his property and the effect thereof. Mr. W. U. Corley, the attorney who drafted the will, testified that the testator met him in the hall of the courthouse about one month prior to November 4, 1949, and asked him to prepare his will, telling him how he wanted to dispose of his property and informing him his reason therefor; that Mr. Corley told him that he was busy at the time and unable then to attend to the matter but would be glad to do so later; that thereafter, on November 4, 1949, the testator and the appellee, Moselle Reid, came to his office; that the testator then again requested the attorney to prepare his will, telling him how he wanted to dispose of his property and giving him his reasons therefor, his reasons being that the said Moselle Reid, his niece, had aided him and taken care of him and rendered services to him throughout a period of years; that the attorney prepared the will in accordance with the instructions given him by the testator, and after preparing the will, called a Mrs. H. W. Herrington who worked in a shop next door; that the will was read by the attorney to the testator in the presence of Mrs. Herrington and that the testator was then asked if the will was as he wanted it, and upon replying that it was, the will was then executed by him and was signed by the attorney and Mrs. Herrington as witnesses; that at the time of the execution of the will the testator was of sound and disposing mind and thoroughly understood and appreciated what he was doing. Mrs. Herrington testified that she had known the testator for some fifteen years or more and that at the

time he executed the will he was of sound mind and thoroughly understood and appreciated what he was doing. Other witnesses for the proponent of the purported will of November 4, 1949, testified that the testator, up to the time of the execution of said instrument and afterwards, performed chores on his farm and made purchases of merchandise at a store in the community and issued and signed and delivered checks in payment of the same and maintained a bank account, depositing and withdrawing funds in the bank, attended church services, and possessed a normal mind, although experiencing some difficulty in going about because of his impaired eyesight and advancing years.

The testimony on behalf of the contestants was to the effect that for some four or five years prior to his death, and particularly during the two or three years preceding his death, the testator's mind was not normal and he was incapacitated to transact his business and affairs and particularly was mentally incapable of disposing of his property by will. These witnesses for the contestants testified that the testator during the latter years of his life was forgetful and was unable to recognize old friends and that at times he did not know where he was and that the appellee transacted his business for him and looked after his affairs; that in the year 1947, approximately two years before his death, the appointment of a guardian for him was suggested by the appellee and the testator's brother; that no guardian, however, was ever appointed since no agreement could be reached as to who should serve; that while the question of the appointment of a guardian was being considered in the office of Mr. E. L. Dent, attorney, Mr. Dent sent for Dr. Allred to get his opinion as to the mental condition of the testator; that Dr. Allred had known the testator for a number of years and had attended him many years previously on the occasion when the testator's eye was removed; that Dr. Allred came to the attorney's office in response to the call and examined the testator; that the testator did

not appear to know him; that the doctor checked his blood pressure and remained with him for about thirty minutes; that the doctor was of the opinion that the testator was then afflicted with senile psychosis or paresis, which is a disease of the blood vessels of the brain and retards the flow of blood, preventing the normal functioning of the brain; that such disease is progressive in its nature and that its tendency is to grow worse; that while he had not had any contact with the testator beween his observation of him on this occasion in 1947 and the date of the execution of the purported will of 1949, he was of the opinion that the testator was mentally incapable of transacting his business and affairs or of making a will and appreciating the nature of the transaction, although he admitted that notwithstanding his condition as he observed him in 1947, it was possible that on November 4, 1949, the date of the execution of said purported will, he might have been able to understand and appreciate the nature and effect of his act.

The evidence presented to the chancellor two issues. One issue was whether or not at the very time of the execution of the purported will of November 4, 1949, the testator possessed the mental capacity to then understand and appreciate the nature and effect of his act and the nature and objects of his bounty. Lum v. Lasch, 93 Miss. 81, 46 So. 559; Ward v. Ward, 203 Miss. 32, 33 So.2d 294. The other issue was whether or not the purported will of November 4, 1949, was the result of such undue influence exercised over him by the appellee, Moselle Reid, who was the beneficiary named in the instrument, as to destroy and take away his free agency. Gillis v. Smith, 114 Miss. 665, 75 So. 451. From the mass of conflicting testimony before the chancellor, he resolved these issues in favor of the appellee and found as a fact that the purported will of November 4, 1949, was the true last will and testament of the said deceased, executed at a time when the deceased was of sound and disposing mind and free from undue influence. We think there was ample evidence to

support the finding of the chancellor and certainly we are unable to say that the findings of fact and the decision of the chancellor on the issues presented were manifestly wrong.

It is further contended by the appellants that the court erred in excluding evidence of statements alleged to have been made by the testator prior to the execution of the purported will of November 4, 1949, as to the disposition which he wanted to make of his property. It is true that this objection to this character of evidence was first sustained by the chancellor, but he later reversed his ruling and held the evidence to be admissible and the same was considered along with the other evidence in the case.

It is argued also by the appellants that the chancellor erred in excluding evidence of statements claimed to have been made by the appellee Moselle Reid during the two years preceding the testator's death to the effect that the testator was mentally incapable of transacting his own business and affairs. In the state of the record, we are unable to concur in this contention of the appellants. The appellee was placed upon the stand in her own behalf and testified as to the mental condition and testamentary capacity of the testator. Objection was made to her testimony by the appellants upon the ground that her testimony tended to establish her claim against the estate of a deceased person in violation of Section 1690 of the Mississippi Code of 1942. The chancellor first overruled this objection and later sustained it, excluding the testimony of the appellee as to the mental capacity of the testator. Since the testimony of the appellee as to the mental capacity of the testator was excluded on the objection of the appellants, we think that the court was correct in excluding evidence thereafter offered by the appellants with respect to the same matter. ''Where evidence of a particular matter offered by one party has been excluded, although perhaps improperly, on the objection of the adverse party, the adverse party is not entitled to introduce

evidence with respect to the same matter." 31 C.J.S., Evidence, Sec. 191, page 918.

In the light of the views heretofore expressed, we are of the opinion that the decree of the court below should be and it is affirmed.

Affirmed.

Roberds, P. J., and Alexander, Hall and Kyle, JJ., concur.