## CITY OF PENSACOLA v. ESCAMBIA COUNTY, FLORIDA, et al.
### Case No. 81-928-CA-01
First Judicial Circuit, Escambia County
September 21, 1982

Don J. Caton, City Attorney, W. Peter Burns and Talbot D'Alemberte, Steel Hector & Davis, for plaintiff.

Paula G. Drummond, County Attorney, Robert L. Nabors, Nabors, Potter, McClelland, Griffith & Jones, P.A., Miles David, and Barbara S. Harmon, Asst. Attorney General, for defendants.

BEN GORDON, Circuit Judge

This "double taxation" lawsuit was brought by the City of Pensacola, pursuant to Article VIII, §1(h), Florida Constitution and §125.01(6), Florida Statutes (1981). It challenges the expenditure, by Escambia County, of countywide revenues to pay for the following services which, the City contends, provide no real or substantial benefit to City residents:

A.   Sheriff's Patrol Division, including overhead and administrative support service costs allocable to the Patrol Division;

B.  Sheriff's Investigation Division, including overhead and administrative support service costs allocable to the Investigation Division;

C.  Services of the County Road Operations Department provided on and construction of roads located in the unincorporated areas and classified by the State of Florida Department of Transportation as local roads. Plaintiff did not contend that services provided on countywide facilities, facilities in the City and on the arterial and collector State and County road system were not a real and substantial benefit;

D.  Services of the County Planning and Engineering Department provided on roads located in the unincorporated areas and classified by the State Department of Transportation as local roads; and

E.  Certain County administrative and support services, to the extent the costs of such services are properly allocable to the services listed above.

Trial was held from August 23 to August 27, 1982. Extensive testimony was taken and documentary evidence presented by both parties.

The thrust of the testimony and evidence presented by Plaintiff City of Pensacola was that the challenged services did not provide a real and substantial benefit to the residents or property of the City. The Defendant Escambia County in defense attempted to demonstrate quantified or measurable benefit within the corporate boundaries of the City of Pensacola or directly to the City residents and property or departments of the City and evidence of factors of indirect and non-measurable benefit to residents and property of the City from the challenged services.

This Court hereby recognizes the following principles embodied under the applicable constitutional and statutory provisions:

1.  Plaintiff City of Pensacola has the burden to prove that the challenged services provide no real and substantial benefit to the citizens or property of the City of Pensacola; that the challenged services are funded from County revenues other than revenues derived specifically from or on behalf of a municipal service taxing unit, unincorporated area, service area or program area; and that the challenged services, including the overhead and administration costs, are identifiable services.

2.  The requisite benefit to be received by residents and property in the City of Pensacola need not be direct or primary. It is necessary that the benefit be real and substantial and not merely illusory or inconsequential.

*City of St. Petersburg v. Briley, Wild & Associates, Inc.*, 239 So.2d 817 (Fla. 1970); *Manatee County v. Town of Longboat Key*, 365 So.2d 143 (Fla. 1978); and *Alsdorf v. Broward County*, 373 So.2d 695 (Fla. App. 1979).

The dispute between the City and the County dates back at least to 1978, when the City sent the County a "double taxation" resolution as required by §125.01(6), Florida Statutes. In response to this resolution, the County hired Mr. Richard Kelton, Southern-Kelton & Associates, to study the problem. Since that time, the question of dual taxation has been studied by both the City and County and, in the 1979-1980 budget, the County created a MSTV which partially addressed the City's concerns. The County contends that it has adequately provided for any challengeable services through the establishment of a MSTV or other means as provided for in Florida Statute §125.01(7). The City's contention is that the County has not so provided, leaving services uncorrected, resulting in dual taxation to the citizenry of Pensacola.

In recognition of such legal principles and after consideration of the testimony and evidence presented by both parties at trial in this cause, this Court hereby makes the following findings:

1. Services provided by the Sheriff's Patrol Division provide no real and substantial benefit to residents and property of the City of Pensacola under the requirements of Article VIII, §1(h), Florida Constitution and §125.01(7), Florida Statutes.

The patrol areas of the Sheriff's road patrol adjacent to the city do not include portions of the City. The Sheriff's road patrol does not routinely patrol any area of the City. Complaints received by the Sheriff's Department from areas within the City are referred to the City of Pensacola Police Department for responses unless the Sheriff's Department is specifically requested to respond. Evidence submitted at trial indicated a minute number of responses by the Sheriff's road patrol within the City.

2. Services provided by the Sheriff's Investigation Division do provide a real and substantial benefit to the citizens and property of the City of Pensacola under the requirements as set out in Article VIII, §1(h), Florida Constitution and §125.01(7), Florida Statutes. The Investigation Division works extensively in and out of the City of Pensacola; the Narcotics Division being the most active investigative arm of the County Sheriff's Department within the City of Pensacola. Much of the urbanized area of the County is unincorporated. City residents work and own property in the unincorporated areas which are served by investigations of the Sheriff's Department. Because of the high mobility of the

professional criminal, the solving of a crime in an unincorporated area often clears investigations of crimes within the City of Pensacola.

3. Services provided by the Escambia County Road Operations Department on roads classified as local roads by the Florida Department of Transportation, whether located in an urbanized or rural area of the County, provide no real and substantial benefit to the citizens or property within the City of Pensacola under the requirements of Article VIII, §1(h), Florida Constitution and §125.01(7), Florida Statutes. Both parties have stipulated that arterial and collector roads, as defined by the Department of Transportation, within urbanized areas of the County, do provide a real and substantial benefit to the citizens of the City of Pensacola. Local roads, as defined by §334.03(17) of the Florida Statutes,

> §334.03 (17) "Local road."—A route providing service which is of relatively low average traffic volume, short average trip length or minimal through-trafficmovements, and high land access for abutting property.,

are those roads which mainly serve as subdivision roads and are used primarily by persons going to and from places of residence. When traveling through unincorporated areas of the County, citizens of the City of Pensacola will not customarily utilize the subdivision or local roads but are likely to use arterial and collector roads. Local roads primarily serve abutting property owners. All of the County's local roads are contained in the unincorporated areas of the County's local roads are contained in the unincorporated areas of the County. Primary benefits of local roads are to the people who live on them.

Mr. Victor Poteat testified for the County that the local roads in the "Pensacola urbanized area" may be used by City residents, but it appears to the Court that the primary beneficiaries of the local roads are the people who live on them. Indeed, it is the urbanization of the unincorporated areas surrounding Pensacola which has given rise to the need for a system of local County roads, principally subdivision roads, and the clear purpose and actual use of those roads is to provide access for unincorporated area residents.

Based upon all the evidence presented, the Court concludes that County local roads provide no real and substantial benefit to City residents or property. This finding applies to all County departments engaged in planning, engineering, construction and maintenance of these local roads and drainage projects. These include the Road Operations Department and that portion of the Planning and Engineering Department which relates to and supports the road function.

The City of Pensacola is part of a large urbanized area. A significant portion of the major employers, shopping and medical facilities in the Pensacola area are located outside the City limits of Pensacola. As the County contends, road access to and from these facilities do unquestionably provide a real and substantial benefit to the citizens and property of the City of Pensacola. The Court finds, however, that the overwhelming majority of travel to and from these places is done on arterial or collector roads which the City here admits do provide a real and substantial benefit. Local roads, on the other hand, do not customarily enhance or facilitate travel by City residents to and from the places mentioned.

Services provided by the Escambia County Road Operations Department and the construction of roads classified as local roads by the Florida Department of Transportation outside the urbanized area of Escambia County fail to provide a real and substantial benefit to the residents and property within the City of Pensacola under the requirements of Article VIII, §1(h), Florida Consititution and §125.01(7), Florida Statutes.

4. Evidence introduced at trial supports the City's position that certain overhead and administrative expenses must be allocated to the services set forth above in order to insure that the total true costs of those services be paid from non-countywide revenues. The Court finds that an appropriate portion of the following intra-departmental services within the Sheriff's Department must be allocated to the Road Patrol:

(a) Administration Division;

(b) Finance Division;

(c) Support Services Division, including fuel costs which shall be allocated to the patrol based upon their actual usage.

In the Planning and Engineering Department, engineering administration costs shall be allocated across the four sections within the department.

The Court also finds that the following extra-departmental costs must be allocated to the Sheriff's Patrol and to the portions of the Road Operations and Planning and Engineering budgets related to local roads:

(a) Civil Service Board;

(b) Equal Employment Opportunity Office;

(c) Budget Department.

## CONCLUSIONS OF LAW

The findings of fact set forth above require the conclusion that the County provides services or maintains programs which provide no real and substantial benefit to City residents or property. The County argues that there are indirect benefits to the City. The Court finds that there are services provided by the County for which the citizenry of the City of Pensacola derive no real and substantial benefit and for which there are no indirect benefits as a matter of law. The City has complied with all conditions precedent to seeking judicial relief.

The decision of the dual taxation case rests on the peculiar facts of each case and each budget year. Indeed, the determination of a particular set of facts does not govern even within the county of such determination, changed circumstances or different years. *Alsdorf v. Broward County*, 373 So.2d 695, 701 (Fla. 4th DCB 1979). The legal precedents in the area of dual taxation, when closely analyzed, stand for the proposition that the trial judge must carry the burden of determination based on the realities of each case and the courts have not evolved a philosophic position to solve what is essentially a factual problem. *See, City of Ormond Beach v. County of Volusia*, 383 So. 2d 671 (Fla. DCB 1980) (trial court affirmed in decision on library system); *Manatee County v. Town of Longboat Key*, 352 So. 2d 809 (Fla. 2d DCB 1977) (trial court affirmed in its decision that road and other services were of no real and substantial benefit and case remained for proper finding on sheriff's functions); *Alsdorf v. Broward County*, 373 So.2d 695 (Fla. 4th DCB 1979) (trial court affirmed on the factual findings); *City of St. Petersburg v. Briley, Wild & Associates, Inc.*, 239 So.2d 817 (Fla. 1970) (trial court affirmed where it found that sewerage plant was of real and substantial benefit where health of municipal residents could be impacted). Some judgments such as that in Sarasota County have been affirmed without substantial opinion.

The Court therefore concludes that none of the issues in this case are controlled by clear legal authority and it is therefore the duty of the trial judge to resolve the facts based on the evidence before him. *See, Alsdorf v. Broward County*, 333 So.2d 457 (Fla. 1976).

The Court cannot require the County to select among the statutory methods available to the County to alleviate this problem. That is a political decision which rests with the County Commissioners and this Court has no business invading that province. The Court must, however, direct the County, in its 1982-1983 and subsequent budgets, to develop an appropriate mechanism to eliminate the problem of dual taxation. Therefore, it is

ADJUDGED, as follows:

1. In its 1982-1983 and succeeding budgets, the county shall identify the total appropriations, including allocable overhead and administration expenses for the Sheriff's Patrol, and for the construction, repair, maintenance, drainage projects and all the other work associated with County local roads.

2. All such appropriations shall be funded by sources on or behalf of the unincorporated area or to develop a mechanism in accordance with Florida Statute §125.01(6) to fund the costs of such services.

3. The Court retains jurisdiction of this matter for such further proceedings as may be required, including but not limited to, any proceedings necessary to determine whether the County budgets adopted in the future comply with the requirements of paragraph 1. above.